93.    On April 28, 2005, defendant McGuire spoke at the Avaya Conference

Call with Merrill Lynch at which time he demonstrated that he was fully aware during

the Class Period that Avaya was facing stiff pricing competition during the Class

Period that had forced Avaya to grant clients rebates of as much as 30-40%, far in

excess of normal discounts as explained by CWN4.  During the conference call, Tal

Lani of Merrill Lynch asked McGuire about "some reports published recently saying

that Avaya gave a 30% to 40% discount in the first quarter."  Defendant McGuire

acknowledged the reports were accurate, responding:  "Now, I hear the noise that, yes,

we were out with a 30% to 40% discount on a program in last quarter. . . .  [I]t's not

unusual . . . .  And quite frankly, a 30% to 40% discount is not out of the norm for any

of these programs."

94.    On August 9, 2005, Avaya filed its quarterly report with the SEC.  In this

filing, signed by defendants Peterson and McGuire, Avaya admitted it was then still

grappling with problems resulting from its go-to-market strategy and from the

integration of Tenovis.

### DEFENDANT McGUIRE'S INSIDER STOCK SALES DURING THE CLASS PERIOD WERE UNUSUAL AND SUSPICIOUS

95.    As alleged herein, defendants acted with scienter in that defendants knew

that the public documents and statements issued or disseminated in the name of the

Company were materially false and misleading; knew that such statements or

documents would be issued or disseminated to the investing public; and knowingly

and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Avaya, their control over, and/or receipt and/or modification of Avaya's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Avaya, participated in the fraudulent scheme alleged herein.

96.     Defendants were further motivated to engage in this course of conduct in order to: (i) enter Avaya into a $400 million unsecured revolving credit facility on more favorable terms than it would have had the truth been known; (ii) complete the LYONs repurchase using artificially inflated stock as currency rather than having to pay the loans off with cash; (iii) reap the rewards of the special incentive plan implemented by Avaya's board of directors to promote the successful integration of Tenovis; and (iv) enable the Individual Defendants to sell over 350,000 shares of their personally held Avaya stock at inflated prices and thereby reap over $5 million in gross proceeds. The details of the Individual Defendants' stock sales are set forth in the following graphic:

|  | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| **Garry K. McGuire** | 11/1/2004 | 20,000 | $14.450 | $289,000 |
|  | 11/3/2004 | 111,760 | $14.500 | $1,620,520 |
|  | 12/15/2004 | 3,600 | $16.700 | $60,120 |
|  | 12/15/2004 | 3,000 | $16.690 | $50,070 |
|  | 12/15/2004 | 2,200 | $16.730 | $36,806 |
|  | 12/15/2004 | 1,900 | $16.600 | $31,540 |
|  | 12/15/2004 | 1,900 | $16.640 | $31,616 |
|  | 12/15/2004 | 1,800 | $16.630 | $29,934 |

| | | | |
|---|---|---|---|
| 12/15/2004 | 1,700 | $16.650 | $28,305 |
| 12/15/2004 | 1,600 | $16.740 | $26,784 |
| 12/15/2004 | 1,500 | $16.750 | $25,125 |
| 12/15/2004 | 1,400 | $16.660 | $23,324 |
| 12/15/2004 | 1,400 | $16.720 | $23,408 |
| 12/15/2004 | 1,100 | $16.680 | $18,348 |
| 12/15/2004 | 1,000 | $16.710 | $16,710 |
| 12/15/2004 | 700 | $16.590 | $11,613 |
| 12/15/2004 | 600 | $16.620 | $9,972 |
| 12/15/2004 | 600 | $16.610 | $9,966 |
| 12/15/2004 | 500 | $16.500 | $8,250 |
| 12/15/2004 | 400 | $16.570 | $6,628 |
| 12/15/2004 | 300 | $16.760 | $5,028 |
| 12/15/2004 | 300 | $16.490 | $4,947 |
| 12/15/2004 | 300 | $16.550 | $4,965 |
| 12/15/2004 | 300 | $16.480 | $4,944 |
| 12/15/2004 | 300 | $16.670 | $5,001 |
| 12/15/2004 | 200 | $16.770 | $3,354 |
| 12/15/2004 | 200 | $16.780 | $3,356 |
| 12/15/2004 | 200 | $16.510 | $3,302 |
| 12/15/2004 | 200 | $16.580 | $3,316 |
| 12/15/2004 | 100 | $16.530 | $1,653 |
| 12/15/2004 | 100 | $16.800 | $1,680 |
| 12/15/2004 | 100 | $16.450 | $1,645 |
| 12/15/2004 | 100 | $16.440 | $1,644 |
| 12/15/2004 | 100 | $16.460 | $1,646 |
| 12/15/2004 | 100 | $16.470 | $1,647 |
| 12/15/2004 | 100 | $16.520 | $1,652 |
| 12/15/2004 | 100 | $16.560 | $1,656 |
| 1/3/2005 | 2,200 | $17.020 | $37,444 |
| 1/3/2005 | 2,200 | $17.010 | $37,422 |
| 1/3/2005 | 2,100 | $17.140 | $35,994 |
| 1/3/2005 | 2,000 | $17.150 | $34,300 |
| 1/3/2005 | 1,500 | $17.180 | $25,770 |
| 1/3/2005 | 1,400 | $17.130 | $23,982 |
| 1/3/2005 | 1,300 | $17.110 | $22,243 |
| 1/3/2005 | 1,200 | $17.220 | $20,664 |
| 1/3/2005 | 1,000 | $17.070 | $17,070 |
| 1/3/2005 | 1,000 | $17.090 | $17,090 |
| 1/3/2005 | 1,000 | $17.160 | $17,160 |
| 1/3/2005 | 1,000 | $17.040 | $17,040 |
| 1/3/2005 | 1,000 | $17.000 | $17,000 |
| 1/3/2005 | 1,000 | $17.050 | $17,050 |
| 1/3/2005 | 800 | $17.200 | $13,760 |
| 1/3/2005 | 800 | $17.190 | $13,752 |
| 1/3/2005 | 800 | $17.120 | $13,696 |
| 1/3/2005 | 800 | $17.030 | $13,624 |
| 1/3/2005 | 700 | $17.170 | $12,019 |
| 1/3/2005 | 600 | $16.990 | $10,194 |
| 1/3/2005 | 500 | $17.290 | $8,645 |

| | | | | |
|---|---|---|---|---|
| | 1/3/2005 | 500 | $17.100 | $8,550 |
| | 1/3/2005 | 400 | $17.080 | $6,832 |
| | 1/3/2005 | 400 | $17.350 | $6,940 |
| | 1/3/2005 | 400 | $17.340 | $6,936 |
| | 1/3/2005 | 400 | $16.960 | $6,784 |
| | 1/3/2005 | 300 | $17.330 | $5,199 |
| | 1/3/2005 | 300 | $17.360 | $5,208 |
| | 1/3/2005 | 300 | $17.270 | $5,181 |
| | 1/3/2005 | 300 | $17.210 | $5,163 |
| | 1/3/2005 | 300 | $16.980 | $5,094 |
| | 1/3/2005 | 200 | $17.300 | $3,460 |
| | 1/3/2005 | 200 | $17.370 | $3,474 |
| | 1/3/2005 | 200 | $17.280 | $3,456 |
| | 1/3/2005 | 200 | $16.970 | $3,394 |
| | 1/3/2005 | 100 | $17.320 | $1,732 |
| | 1/3/2005 | 100 | $17.260 | $1,726 |
| | 1/3/2005 | 100 | $17.230 | $1,723 |
| | 1/3/2005 | 100 | $17.250 | $1,725 |
| | 1/3/2005 | 100 | $17.240 | $1,724 |
| | 1/3/2005 | 100 | $17.060 | $1,706 |
| | 1/3/2005 | 100 | $16.930 | $1,693 |
| | 2/1/2005 | 30,000 | $14.300 | $429,000 |
| | 3/1/2005 | 30,000 | $14.000 | $420,000 |
| **Total** | | 251,760 | | $3,772,094 |
| | | | | |
| **Donald K. Peterson** | 11/1/2004 | 50,000 | $14.200 | $710,000 |
| | 2/4/2005 | 50,000 | $14.130 | $706,500 |
| **Total** | | 100,000 | | $1,416,500 |
| **Grand Total** | | **351,760** | | **$5,188,594** |

97.     Defendant McGuire's Class Period sales of Avaya common stock were unusual and suspicious compared to his pre- and post-Class Period trading, in that his Class Period sales were much higher compared to the periods immediately before and immediately after the Class Period.  For example, as alleged above, Defendant McGuire sold 251,760 shares for proceeds of $3,772,094 during the 197-day long Class Period.  Yet, in the 197-day period immediately before the Class Period, he sold only 40,000 shares for proceeds of $554,000.  Thus, Defendant McGuire sold over 600% more shares, and received over 600% more in proceeds, with his Class Period

sales, as compared to the same time period immediately before the Class Period began. In addition, McGuire has sold no shares after the Class Period. McGuire sold 97% of the shares he actually owned during the Class Period.

### APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

98.     The market for Avaya securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Avaya's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Avaya securities relying upon the integrity of the market price of Avaya's securities and market information relating to Avaya, and have been damaged thereby.

99.     During the Class Period, defendants materially misled the investing public, inflating the price of Avaya's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

100.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the

Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Avaya's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Avaya and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.

101. Defendants' materially false and misleading statements during the Class Period resulted in plaintiffs and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

102. At all relevant times, the market for Avaya securities was an efficient market for the following reasons, among others:

(a) Avaya's stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, Avaya filed periodic public reports with the SEC and the NYSE;

(c) Avaya regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Avaya was followed by several securities analysts employed by major brokerage firms who wrote reports, which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

103.   As a result of the foregoing, the market for Avaya's securities promptly digested current information regarding Avaya from all publicly available sources and reflected such information in Avaya's securities' prices. Under these circumstances, all purchasers of Avaya's securities during the Class Period suffered similar injury through their purchase of Avaya's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

104.   The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there also were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular

forward-looking statement was false, and the forward-looking statement was authorized and approved by an executive officer of Avaya who knew that those statements were false when made.

## LOSS CAUSATION/ECONOMIC LOSS

105. During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated Avaya's securities prices and operated as a fraud or deceit on Class Period purchasers of Avaya securities by misrepresenting the Company's business success and future business prospects. Defendants achieved this façade of success, growth and strong future business prospects by blatantly misrepresenting the Company's business prospects. Later, however, when defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, Avaya stock fell precipitously as the prior artificial inflation came out of Avaya's securities prices. As a result of their purchases of Avaya securities during the Class Period, plaintiffs and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

106. During the Class Period, the defendants presented a misleading picture of Avaya's business and prospects. Thus, instead of truthfully disclosing during the Class Period that Avaya's business was not as healthy as represented, defendants caused Avaya to misrepresent the demand from customers, pricing pressures, and forecasted earnings. During the Class Period, defendants also repeatedly but falsely emphasized Avaya's successful integration of Tenovis.

- 57 -

107.   These false claims of strong future results, demand, pricing, and the successful integration of Tenovis caused and maintained the artificial inflation in Avaya's securities prices throughout the Class Period and until the truth was revealed to the market.

108.   Defendants' false and misleading statements had the intended effect and caused Avaya's common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $17.73 per share.

109.   On April 19, 2005, defendants were forced to publicly disclose that: (1) Avaya's "go-to-market" model had disrupted its sales; (2) its fiscal 2005 results previously forecasted would not be achieved; (3) demand was not as previously represented; (4) there were extreme downward pricing pressures contrary to defendants' representations; and (5) the integration of Tenovis had not been nearly as successful as prior representations.   These public revelations indicated that Avaya's fiscal 2005 financial results would be much worse than prior representations, that Avaya had failed to achieve the operational efficiencies represented through Tenovis and thus the Company's prospects for business success and earnings growth for fiscal 2005 and beyond were severely diminished.   As investors and the market became aware that Avaya's actual business prospects were poorer than represented, which had been obfuscated by defendants, the prior artificial inflation came out of Avaya's securities prices, damaging investors.

110.   As a direct result of defendants' admissions and the public revelations on April 19, 2005 regarding the falsity about Avaya's previous Class Period representations and its actual business prospects going forward, Avaya's stock price plummeted 25%, on unusually high volume, falling from $10.69 on April 19, 2005, to $8.01 per share on April 20, 2005, a one day drop of $2.68 per share. This drop, as well as other declines in March 2004 based on analyst reports, alleged in ¶¶80-85, partially disclosing the truth, removed the inflation from Avaya's securities prices, causing real economic loss to investors who had purchased the securities during the Class Period. In sum, as the truth about defendants' fraud and Avaya's business performance was revealed, the Company's stock price plummeted, the artificial inflation came out of the stock and plaintiffs and other members of the Class were damaged, suffering economic losses of at least $2.68 per share.

111.   The 25% decline in Avaya's stock price at the end of the Class Period, as well as declines in March 2005, which partially revealed the fraud, were a direct result of the nature and extent of defendants' fraud finally being revealed to investors and the market. The timing and magnitude of Avaya's stock price declines negate any inference that the loss suffered by plaintiffs and other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the defendants' fraudulent conduct. During the same period in which Avaya's stock price fell 25% as a result of defendants' fraud being revealed (April 19 and 20, 2005), the Standard & Poor's 500 securities index was flat. The

- 59 -

economic loss, *i.e.*, damages, suffered by plaintiffs and other members of the Class was a direct result of defendants' fraudulent scheme to artificially inflate Avaya's securities prices and the subsequent significant decline in the value of Avaya's securities when defendants' prior misrepresentations and other fraudulent conduct was revealed.

## PLAINTIFFS' INVESTIGATION

112.   Plaintiffs allege the following based upon the investigation of Plaintiffs' counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Avaya, as well as regulatory filings and reports, securities analysts reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiffs have also conducted numerous interviews with former Avaya employees and others knowledgeable abut the matters set forth herein.   Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

113.   The claims asserted herein arise under and pursuant §§10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

114.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337, and §27 of the Exchange Act.

- 60 -

115.    Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b).  Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District and Avaya conducts business in this District.

116.    In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

117.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased the publicly traded securities of Avaya between October 5, 2004 to April 19, 2005, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

118.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Avaya common shares were actively traded on the NYSE.  While the exact number of Class members is unknown to plaintiffs at this time and can only be ascertained through appropriate discovery, plaintiffs believe that there are hundreds or thousands of members in the proposed

Class. Record owners and other members of the Class may be identified from records maintained by Avaya or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

119.   Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violating the federal securities laws complained of herein.

120.   Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

121.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)   whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)   whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Avaya; and

(c)   to what extent the members of the Class have sustained damages and the proper measure of damages.

122.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

123.   Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

124.   During the Class Period, Avaya and the Individual Defendants, and each of them, carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did:  (a) deceive the investing public, including plaintiffs and other Class members, as alleged herein; (b) artificially inflate and maintain the market price of Avaya's securities; and (c) cause plaintiffs and other members of the Class to purchase Avaya's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

125.   Defendants:  (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts

- 63 -

necessary to make the statements made not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain an artificially high market price for Avaya's securities in violation of §10(b) of the Exchange Act and SEC Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

126. In addition to the duties of full disclosure imposed on defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC as embodied in SEC Regulation S-X (17 C.F.R. §210.01, *et seq.*) and Regulation S-K (17 C.F.R. §229.10, *et seq.*) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition and earnings so that the market price of the Company's securities would be based on truthful, complete and accurate information.

127. Avaya and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to

conceal adverse material information about the business, operations and future prospects of Avaya as specified herein.

128.   These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Avaya's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Avaya and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Avaya's securities during the Class Period.

129.   The Individual Defendants' primary liability, and controlling person liability, arises from the following facts:  (a) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period; (b) the Individual Defendants were privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; and (c) the Individual Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

130. The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Avaya's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

131. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market prices of Avaya's securities were artificially inflated during the Class Period. In ignorance of the fact that the market prices of Avaya's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during

the Class Period, plaintiffs and the other members of the Class acquired Avaya's securities during the Class Period at artificially high prices and were damaged thereby.

132.   At the time of said misrepresentations and omissions, plaintiffs and other members of the Class were ignorant of their falsity, and believed them to be true. Had plaintiffs and the other members of the Class and the marketplace known of the true financial condition and business prospects of Avaya, which were not disclosed by defendants, plaintiffs and other members of the Class would not have purchased or otherwise acquired their Avaya securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

133.   By virtue of the foregoing, defendants have violated §10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

134.   As a direct and proximate result of defendants' wrongful conduct, plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**COUNT II**

**Violation of Section 20(a) of
the Exchange Act Against All Defendants**

135.   Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

136. The Individual Defendants acted as controlling persons of Avaya within the meaning of §20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiffs contend are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

137. In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Company controlled the Individual Defendants and all of its employees.

138. As set forth above, Avaya and the Individual Defendants each violated §10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the defendants are liable pursuant to

§20(a) of the Exchange Act.  As a direct and proximate result of Avaya's and the Individual Defendants' wrongful conduct, plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for relief and judgment, as follows:

A.     Determining that this action is a proper class action, designating plaintiffs as lead plaintiffs and certifying plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure and plaintiffs' counsel as lead counsel;

B.     Awarding compensatory damages in favor of plaintiffs and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Such equitable/injunctive or other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

DATED:  October 17, 2005

COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN (PP8416)
JEFFREY W. HERRMANN (JH5706)


_____/s/ Peter S. Pearlman_____
PETER S. PEARLMAN

Park 80 Plaza West-One
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)

Liaison Counsel

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA, JR.
200 Broadhollow Road, Suite 406
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
ARTHUR C. LEAHY
MATTHEW P. SIBEN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

S:\CasesSD\Avaya\CPT-CONSOL.doc

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

DISTRICT NO. 9, I.A. OF M. & A.W. PENSION TRUST ("Plaintiff") declares:

1.    Plaintiff has reviewed a complaint and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|----------|-------------|------|-----------------|

*See* attached Schedule A.

5.    During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below:

*In re Alliance Gaming Corp. Sec. Litig.*, No. CV-S-04-0821-KJD-PAL (D. Nev.)
*Keritsis v. Campbell, et al.*, No. 05-CV-1926 (S.D.N.Y.)

6.    The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

S:\Case Startup\Avaya\Certs\District 9 Pen.doc                                    AVAYA

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _____ day of _____, 2005.

DISTRICT NO. 9, I.A. OF M. & A.W.
PENSION TRUST

By: _Roger E Poole_

Its: _6/17/05_

- 2 -

AVAYA

**SCHEDULE A**

**SECURITIES TRANSACTIONS**

**Acquisitions**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 11/05/2004 | 900 | $15.5000 |
| 02/16/2005 | 15,600 | $13.0386 |
| 02/17/2005 | 13,600 | $13.3911 |
| 02/17/2005 | 3,200 | $13.5953 |
| 02/18/2005 | 3,400 | $13.6636 |
| 02/18/2005 | 200 | $13.7150 |
| 02/22/2005 | 7,000 | $13.2775 |
| 02/23/2005 | 3,000 | $13.4419 |
| 03/03/2005 | 1,300 | $13.8695 |
| 03/04/2005 | 3,000 | $13.7149 |
| 03/07/2005 | 300 | $13.7000 |
| 03/07/2005 | 2,800 | $13.8117 |
| 03/08/2005 | 1,500 | $13.6219 |
| 03/08/2005 | 900 | $13.8050 |
| 03/14/2005 | 6,700 | $12.9898 |
| 03/21/2005 | 5,300 | $12.0293 |
| 03/21/2005 | 2,500 | $12.1000 |
| 04/06/2005 | 15,900 | $12.0328 |

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

UFCW LOCAL 880 – RETAIL FOOD EMPLOYERS JOINT PENSION
FUND and UFCW LOCAL 880 UNION-EMPLOYER PENSION FUND ("Plaintiff")
declares:

1.   Plaintiff has reviewed a complaint and authorized its filing.

2.   Plaintiff did not acquire the security that is the subject of this action at the
direction of plaintiff's counsel or in order to participate in this private action or any
other litigation under the federal securities laws.

3.   Plaintiff is willing to serve as a representative party on behalf of the
class, including providing testimony at deposition and trial, if necessary.

4.   Plaintiff has made the following transaction(s) during the Class Period in
the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|----------|-------------|------|-----------------|

*See* attached Schedule A.

5.   During the three years prior to the date of this Certificate, Plaintiff has
not sought to serve or served as a representative party for a class in an action filed
under the federal securities laws except as detailed below:

*In re Veritas Software Corporation Sec. Litig.*, No. C-03-0283-MMC (N.D. Cal.) (RFEJP Fund)
*UFCW Local 880 – Retail Food v. Newmont Mining Corp., et al.*, No. 05-CV-1046-MSK-BNB
(D. Colo.) (RFEJP Fund)

6.   The Plaintiff will not accept any payment for serving as a representative
party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 15th day of ___June___, 2005.

By: _____

Its: _____

Trustee, UFCW Local 880 - Retail
Food Employers Joint Pension Fund

By: _____

Its: _____

Trustee, UFCW Local 880 Union-
Employer Pension Fund

By: _____

Its: _____

Trustee, UFCW Local 880 – Retail
Food Employers Joint Pension Fund
and UFCW Local 880 Union-
Employer Pension Fund

- 2 -

**SCHEDULE A**

**SECURITIES TRANSACTIONS**

**Acquisitions**

| Date<br>Acquired | Type/Amount of<br>Securities Acquired | Price |
|---|---|---|

**UFCW Local 880 - UE Pension Fund**

| | | |
|---|---|---|
| 12/17/2004 | 10,200 | $17.3804 |
| 12/20/2004 | 1,900 | $17.1000 |
| 01/10/2005 | 4,925 | $17.3086 |
| 02/10/2005 | 4,000 | $13.1100 |

**UFCW Local 880 - RFEJ Pension Fund**

| | | |
|---|---|---|
| 12/17/2004 | 12,900 | $17.3800 |
| 12/20/2004 | 2,600 | $17.1000 |
| 01/10/2005 | 6,300 | $17.3090 |
| 02/10/2005 | 5,200 | $13.1100 |

**Sales**

| Date<br>Sold | Type/Amount of<br>Securities Sold | Price |
|---|---|---|

**UFCW Local 880 - UE Pension Fund**

| | | |
|---|---|---|
| 03/28/2005 | 300 | $12.2500 |

**UFCW Local 880 - RFEJ Pension Fund**

| | | |
|---|---|---|
| 03/28/2005 | 300 | $12.2200 |

## CERTIFICATION OF NAMED PLAINTIFF
### PURSUANT TO FEDERAL SECURITIES LAWS

NATIONAL ELEVATOR INDUSTRY PENSION FUND ("Plaintiff") declares:

1. Plaintiff has reviewed a complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|----------|-------------|------|-----------------|

*See* attached Schedule A.

5. (a) During the three years prior to the date of this Certificate, Plaintiff has served as a representative party for a class in the following actions filed under the federal securities laws:

(b) Plaintiff is seeking to serve as a representative party for a class in the following actions filed under the federal securities laws:

*Goodman v. Sierra Wireless, Inc., et al.,* No. 05-CV-0262-JM(WMc) (S.D. Cal.)
*Brown v. Biogen Idec Inc.,et al.,* No. 05-10400-RCL (D. Mass.)

(c) Plaintiff initially sought to serve as a representative party for a class in the following actions filed under the federal securities laws, but either withdrew its application or its application was denied in favor of other investors with more significant losses:

*In re Corinthian Colleges, Inc. Shareholder Litig.,* No. CV 04-05025-R-CWx (C.D. Cal.)
*Nguyen v. Ligand Pharmaceuticals Incorporated, et al.,* No. 04-CV-1620-DMS (S.D. Cal.)

AVAYA

6.     The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 28nd day of _June_ , 2005.

NATIONAL ELEVATOR INDUSTRY PENSION FUND

By: _____

Its: _Executive Director_

- 2 -

AVAYA

## SCHEDULE A

### SECURITIES TRANSACTIONS

**Acquisitions**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 10/22/2004 | 184,220 | $13.64 |
| 11/18/2004 | 79,300 | $16.43 |
| 12/06/2004 | 1,200 | $15.89 |
| 01/04/2005 | 84,800 | $17.25 |
| 01/11/2005 | 700 | $16.66 |
| 01/26/2005 | 2,400 | $14.48 |
| 01/26/2005 | 300 | $14.50 |
| 01/26/2005 | 7,044 | $14.97 |
| 01/27/2005 | 300 | $14.30 |
| 01/28/2005 | 600 | $14.39 |
| 02/02/2005 | 2,100 | $13.56 |
| 02/04/2005 | 3,000 | $14.25 |
| 02/07/2005 | 700 | $13.96 |
| 02/08/2005 | 2,100 | $13.46 |
| 02/09/2005 | 500 | $13.15 |
| 02/09/2005 | 400 | $13.19 |
| 02/09/2005 | 900 | $13.33 |
| 02/28/2005 | 3,800 | $14.00 |
| 03/01/2005 | 2,100 | $13.97 |
| 03/02/2005 | 300 | $13.83 |
| 03/03/2005 | 200 | $13.79 |
| 03/04/2005 | 200 | $13.65 |
| 03/10/2005 | 400 | $13.75 |
| 03/10/2005 | 2,800 | $13.76 |
| 03/29/2005 | 1,000 | $11.37 |

**Sales**

| Date Sold | Type/Amount of Securities Sold | Price |
|---|---|---|
| 02/02/2005 | 40,344 | $13.68 |
| 02/02/2005 | 51,500 | $13.68 |
| 04/08/2005 | 263,520 | $11.89 |

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

CITY OF LIVONIA EMPLOYEES' RETIREMENT SYSTEM ("Plaintiff")
declares:

1.  Plaintiff has reviewed a complaint and authorized its filing.

2.  Plaintiff did not acquire the security that is the subject of this action at the
direction of plaintiff's counsel or in order to participate in this private action or any
other litigation under the federal securities laws.

3.  Plaintiff is willing to serve as a representative party on behalf of the
class, including providing testimony at deposition and trial, if necessary.

4.  Plaintiff has made the following transaction(s) during the Class Period in
the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|----------|-------------|------|-----------------|

*See* attached Schedule A.

5.  During the three years prior to the date of this Certificate, Plaintiff has
not sought to serve or served as a representative party for a class in an action filed
under the federal securities laws except as detailed below:

6.  The Plaintiff will not accept any payment for serving as a representative
party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

S:\Case Startup\Avaya\Certs\City of Livonia.doc                                    AVAYA

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 21 day of JUNE , 2005.

CITY OF LIVONIA EMPLOYEES'
RETIREMENT SYSTEM

By: _____

Its: GENERAL COUNSEL

- 2 -

AVAYA

**SCHEDULE A**

**SECURITIES TRANSACTIONS**

**Acquisitions**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 03/08/2005 | 35,550 | $13.5657 |
| 03/09/2005 | 17,750 | $13.7028 |
| 03/10/2005 | 8,075 | $13.6971 |