# EXHIBIT 1

Case 3:05-cv-02319-MLC-LHG   Document 57-3   Filed 11/25/09   Page 2 of 16
Case 2:99-cv-0▮▮31-DRD   Document 91   Filed 02/14/0▮   Page 1 of 15

91

**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LYNNE H. SINAY, ALBERT BASKINGER, ALLEN SIRKIN, BONNIE SIRKIN and STEVE C. McCLINTOCK, On Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>BORON LEPORE & ASSOCIATES, INC., PATRICK G. LEPORE, GREGORY F. BORON, TIMOTHY J. McINTYRE, MARTIN J. VEILLEUX, ROGER B. KAFKER, JACQUELINE C. MORBY, TA VENTURE INVESTORS LTD. PARTNERSHIP, TA ASSOCIATES, INC., ADVENT VII L.P., ADVENT ATLANTIC AND PACIFIC, III L.P., BEAR STEARNS & CO., INC., and, SMITH BARNEY, INC.,<br><br>Defendants. | Civ. No. 99-02231 (DRD)<br><br>**O P I N I O N** |

William J. Pinilis, Esq.
237 South Street
Morristown, NJ 07960

William S. Lerach, Esq.
Arthur C. Leahy, Esq.
Kathleen H. Herkenhoff, Esq.
Tricia L. McCormick, Esq.
Milberg, Weiss, Bershad, Hynes & Lerach, LLP
600 Broadway, Suite 1800
San Diego, CA 92101

Steven G. Schulman, Esq.
Milberg, Weiss, Bershad, Hynes & Lerach, LLP
One Pennsylvania Plaza
New York, New York 10119-0165

ENTERED
ON
THE DOCKET

FEB 15 2001

WILLIAM T. WALSH, CLERK

Stephen E. Cauley, Esq.
Curtis L. Bowman, Esq.
Scott E. Poynter, Esq.
Cauley, Geller, Bowman & Coates, LLP
11311 Arcade Drive
Suite 200
Little Rock, AR 72212
    Attorneys for Plaintiffs

R. Todd Cronan, Esq.
Anthony S. Fiotto, Esq.
Goodwin, Procter & Hoar, LLP
Exchange Place
Boston, MA 02109-2881

Stephen R. Long, Esq.
Drinker, Biddle & Shanley, LLP
500 Campus Drive
Florham Park, New Jersey 07932-1047
    Attorneys for Boron LePore defendants

**DEBEVOISE, Senior District Judge**

This is an action brought by Albert Baskinger, Allen Sirkin, Bonnie Sirkin and Steve C. McClintock,[1] on behalf of purchasers of common stock in Boron LePore & Associates, Inc. ("BLP"), a pharmaceuticals promoter. Plaintiffs allege that defendants pursued a course of conduct to defraud purchasers of BLP stock by artificially inflating the stock price through the dissemination of false and misleading statements about the company, its relationship and future prospects with a major customer and by falsifying financial statements, all in violation of securities laws. Presently pending is a motion for certification of a class of all purchasers of BLP common stock between May 5, 1998 and

---

[1] Lynne H. Sinay has since withdrawn as a class representative.

2

February 4, 1999.

## I. BACKGROUND

The facts were addressed in the opinion on the motions to dismiss and will be summarized here.

BLP provides sales, promotional and medical education services to the pharmaceutical industry. One of BLP's clients was Glaxo Wellcome, Inc. ("Glaxo"). On September 23, 1997, BLP completed an initial public offering and began to sell shares of its stock on the NASDAQ. Thereafter, trouble brewed between BLP and Glaxo, one of BLP's largest sources of revenue, accounting for half of BLP's business. Plaintiffs allege that Glaxo began to scrutinize closely BLP's accounts when Glaxo suspected that BLP was double-billing Glaxo, was billing Glaxo for doctors who did not attend its symposia, and did not return rebates from hotels billed to Glaxo. Plaintiffs allege that in April 1998, a Glaxo executive, Andrew P. Witty, told BLP that Glaxo would "likely terminate its relationship with BLP by the end of 1998." Additionally, in April 1998, Witty requested documents to review BLP's contracts with Glaxo.

BLP completed its secondary offering in May 1998 and issued its prospectus, which allegedly contained misleading information. Additionally, plaintiffs allege that BLP executives falsified BLP's internal financial results beginning with the first quarter results of 1998.

3

Plaintiffs allege that in July 1998, Witty told a BLP executive that "Glaxo would completely terminate its relationship with BLP by the end of 1998." On October 23, 1998, BLP issued a press release that revealed that Glaxo froze its accounts with BLP. Plaintiffs allege that defendants had knowledge that Glaxo was preparing to terminate BLP's services and withheld the information from its stockholders and the market. Plaintiffs allege that throughout the class period, each defendant either made or assisted in making public statements reflecting optimistic growth and expansion plans and were aware that these statements amounted to misrepresentations and omissions that constituted violations of section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"). These statements were made with knowledge that they were false and misleading, and plaintiffs relied on them in deciding to buy (or not to sell) BLP stock. Consequently, the complaint alleges that Defendants' positive portrayals constituted a violation of section 10(b) of the Exchange Act and Rule 10b-5.

In addition to the above-described misrepresentations and omissions, Plaintiffs allege that BLP was assisted in further omissions and misrepresentations by the TA Defendants[2], and the

---

[2] The "TA Defendants" include TA Associates (a private venture capital corporation), its affiliates (Advent VII L.P., Advent Atlantic and Pacific III L.P., TA Venture Investors Limited Partnership) and, two of TA Associates' agents, Roger B. Kafker and
(continued...)

4

Underwriter Defendants.[3] Plaintiffs allege that both the TA Defendants and the Underwriter Defendants pursued an aggressive growth plan in order to conceal BLP's pending precipitous financial decline. In doing so, the TA and Underwriter Defendants either contributed to, or actually committed, fraud by: falsifying financial statements, improperly deferring expenses, improperly hiding expenses, and failing to write down goodwill as part of their accounting. Plaintiffs allege that during the class period, BLP, the TA Defendants and the Underwriter Defendants knowingly misrepresented the financial status and foreseeable future of BLP and thereby benefitted from this misinformation by concurrently profiting from stock sold at inflated prices. Plaintiffs as a proposed class claim that their injuries occurred as a result of this misinformation in that they bought, or failed to sell timely, BLP stock at inflated rates without material information that a reasonable investor should know. Plaintiffs further allege that they subsequently suffered a loss when the true status of BLP stock was revealed.

## II. DISCUSSION

A.  Rule 23(a)

In order to receive certification as a class action,

---

[2](...continued)
Jacqueline C. Morby-both also outside directors of BLP.

[3] Bear Stearns & Co., Inc., and Smith Barney, Inc.

5

plaintiffs must comply with the four prerequisites of Fed. R. Civ. P. 23(a), and must also satisfy the requirements of Rule 23(b). See Baby Neal for and by Kanter v. Casey, 43 F.3d 48 (3d Cir. 1994). Rule 23(a) states that certification will be available only if:

> 1) the class is so numerous that joinder of all members is impracticable;
>
> 2) there are questions of law or fact common to the class;
>
> 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and;
>
> 4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If the requirements of Rule 23(a) are satisfied, one of the three provisions of Rule 23(b) must be met in order for a class to be certified. Rule 23(b)(3) permits certification only where the court finds that the common questions of law or fact predominate over questions affecting only individual members and that a class action is the superior method for fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). The requirements of Rule 23 are meant to ensure that class action treatment "makes sense," in that it is necessary, efficient, and fair to the interested parties. Baby Neal, 43 F.3d at 55. "Class treatment makes no sense if there are no common issues; the trial court would gain nothing but logistical headaches from the combination of the cases for

6

trial." Id. It is necessary to determine whether this action meets the Rule 23 criteria.

1. NUMEROSITY

In order to satisfy Rule 23(a)(1), the moving party must demonstrate that the class is so large that joinder would be impracticable. Fed. R. Civ. P. 23(a)(1). The number of potential class members alone is not dispositive and the moving party need not establish the precise size of the proposed class in order to satisfy this requirement. See Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp., 149 F.R.D. 65, 73 (D.N.J. 1993). Additionally, "impracticability does not mean impossibility, but rather that the difficulty or inconvenience of joining all members of the class calls for class certification." Lerch v. Citizens First Bancorp, Inc., 144 F.R.D. 247, 250 (D.N.J. 1992). Conclusory allegations that joinder is impracticable will not suffice. Liberty Lincoln, 149 F.R.D. at 74. Practicability of joinder depends on a number of factors in addition to the size of the potential class: ease of identifying members and obtaining addresses, ease of service, geographical dispersions, and whether proposed class members could pursue remedies on their own. Id.

Defendants assert that plaintiffs have provided virtually no information regarding the numerosity requirement. Plaintiffs do allege, however, that the class consists of possibly hundreds if

7

not thousands of class members, in light of the fact that 13 million shares of BLP were traded on the NASDAQ. See In re Tele-Save Sec. Litig., No. 98-CV-3145, 2000 U.S. Dist. LEXIS 10134, at *20 (E.D. Pa. July 19, 2000) (concluding allegation that hundreds of investors were defrauded sufficient to satisfy numerosity requirement). Further, this District has recognized a presumption that the numerosity requirement is satisfied when a class action involves a nationally traded security--like BLP. See Brosious v. Children's Place Retail Stores, 189 F.R.D. 138, 145 (D.N.J. 1999). I find that the requirements of Rule 23(a)(1) are met here.

2. COMMONALITY

As a condition for class certification, Rule 23(a)(2) requires that there be questions of fact or law common to all class members. Fed. R. Civ. P. 23(a)(2). The rule requires that there be some question of law or fact common to the class members; all questions of law or fact raised need not be common. Baby Neal, 43 F.3d at 56; Weiss v. York Hosp., 745 F.2d 786, 809 (3d Cir. 1984). The commonality requirement is satisfied if the named plaintiffs and members of the prospective class share at least one question of fact or law in common. In re Prudential Ins. Co. Sales Practices Litig., 148 F.R.D. 283, 310 (3d Cir. 1998), cert. denied, 525 U.S. 1114 (1999). Therefore, there is no need to make an individualized determination of each potential

class member's damages when assessing whether the commonality requirement is satisfied. 5 James Wm. Moore et al., Moore's Federal Practice § 23.23[3] (3d ed. 1999).

I find that plaintiffs have satisfied the commonality requirement of Rule 23(a)(2). Common questions of fact and law exist concerning defendants' alleged misrepresentations and omissions: whether misrepresentations or omissions were made, whether they were material, whether defendants acted with scienter, whether the price of the stock was artificially inflated, whether plaintiffs were damaged. Although defendants argue that commonality is not satisfied (because plaintiffs allege forty different acts or omissions, committed by thirteen different defendants, over the course if fourteen months, which could not have been a coordinated course of conduct), the commonality requirement is satisfied because plaintiffs allege that the acts or omissions were committed in furtherance of a common scheme to defraud investors. See In re Prudential Inc. Co. Sales Practice Litig., 148 F.3d 283, 310 (3d Cir. 1998) (agreeing with district court's certification of class and observance that commonality was satisfied where plaintiffs alleged various deceptive practices as part of common scheme to defraud).]

3. TYPICALITY AND ALIGNMENT OF INTERESTS

The typicality inquiry under Rule 23(a)(3) and the alignment

9

of interests inquiry under Rule 23(a)(4) tend to merge. Georgine v. Amchem Prods., Inc., 83 F.3d 610, 632 (3d Cir. 1996). The purpose of the inquiries under Rules 23(a)(3) and (a)(4) is to ensure that the named plaintiffs' interests and class members' interests are in alignment. Baby Neal, 43 F.3d at 56.

The typicality inquiry assesses whether the case can be maintained efficiently as a class and whether absent class members' interests will be represented fairly by the named plaintiffs. Id. at 57. However, like the commonality requirement, typicality does not require that all putative class members share identical claims; rather, "factual differences among the claims of the putative class members do not defeat certification." Id. at 56. If the named plaintiffs' claims arise from the "same events or practice or course of conduct that gave rise to the claims of the class members, and if based on the same legal theory," then even though there may be actual differences among named plaintiffs and the class, the typicality requirements may be met. Weikel v. Tower Semiconductor Ltd., 183 F.R.D. 377, 390 (D.N.J. 1998) (quoting Grasty v. Amalgamated Clothing & Textile Workers Union, 828 F.2d 123, 130 (3d Cir. 1987)). The typicality requirement is not met when the circumstances of the named plaintiffs or the legal theory upon which their claims are premised are notably different from circumstances or claims of the class members. Id.

In addition, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The adequacy-of-representation requirement has two components designed to assure protection of absent class members' interests: (1) the named plaintiffs' interests and the absent class members' interests must be sufficiently aligned and (2) class counsel must be qualified and must serve the interests of the entire class. Amchem, 83 F.3d at 630.

Plaintiffs assert that the named plaintiffs, like all class members, purchased BLP stock during the class period, without knowledge of the facts allegedly concealed by defendants, at artificially inflated prices, and all suffered damage as a result. Defendants argue that named plaintiffs are not sufficient class representatives because each one has different factual elements to prove. For example, some of the named plaintiffs purchased shares after the October 23, 1998 press release indicating that Glaxo was putting a freeze on new orders. Defendants argue that there is a potential divergence in interests between those class members who purchased shares before October 23 and those (like some named plaintiffs) who purchased after. Those who purchased before the announcement will argue that the drop in stock price after the announcement indicated that defendants had been withholding material information and that they were harmed by defendants' failure to disclose that

11

information sooner; those who made purchases after that date will attempt to minimize the importance of that announcement. However, where, as here, plaintiffs allege a large-scale fraud involving a series of misrepresentations and omissions over a period of time, it is to be expected that investors made purchases on various dates within the class period, both before and after certain alleged misrepresentations or omissions. See, e.g., In re Mutual Bank Sec. Litig., 166 F.R.D. 377, 383 (E.D. Mich. 1996) (granting certification in spite of fact that plaintiffs purchased before or after partial disclosure). Because Rule 23(a)(3) does not require that all plaintiffs' be identically situated, at this time it appears that the typicality requirement is satisfied.[4] Additionally, the interests of the named plaintiffs and absentee plaintiffs are in alignment. There is no indication of conflict between the interests of named plaintiffs and members of the class. I have also reviewed resumes of the firms serving as counsel to plaintiffs in this matter, and I conclude that plaintiffs' counsel is qualified to serve the interests of the class. The requirements of Rule 23(a)(4) have been satisfied.

B.   Rule 23(b)(3)

If all four prerequisites of Rule 23(a) are satisfied, Rule

---

[4] It is noted, however, that Rule 23(c)(1) provides that an order certifying a class may be "conditional, and may be altered or amended before a decision on the merits."

12

23(b)(3) provides that a class action may be maintained so long as questions of law and fact common to the class predominate over questions affecting only individual class members, and if the maintenance of a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

In consideration of commonality and typicality pursuant to Rules 23(a)(2) and (3), it has already been concluded that questions of law and fact common to the proposed class exist and that the class members' claims arose from the same alleged course of conduct by defendants. Rule 23(b)(3) requires that common questions of law and fact not merely exist but predominate over any questions affecting only individual members. Notwithstanding that more stringent standard, it is concluded that Rule 23(b)(3) is satisfied here. The questions of whether misrepresentations or omissions were made, whether they were material, whether defendants acted with scienter and whether the price of the stock was artificially inflated predominate over questions affecting individual class members—such as damages suffered by individual class members, a matter that can be handled after the common issues are resolved.⁵

---

⁵ Defendants argue that plaintiffs have failed to provide evidence on class-wide damages and that therefore class certification is precluded at this time. While it is correct that certification of a class pursuant to Rule 23 would not relieve class members of establishing each element of their securities
(continued...)

13

I also conclude that a class action is superior to other methods of adjudicating claims raised in the Amended Complaint. Applying the factors set forth in Rule 23(b)(3)(A) through (D): the class members do not have a strong interest in individually controlling the prosecution of their own actions rather than being part of a class action; I am not aware of any litigation concerning this matter currently pending by individual class members; judicial economy will be served by litigating these claims together in this forum; and I see no difficulties likely to be encountered in the management of this action.

## CONCLUSION

For the reasons set forth above, the motion for class certification will be granted and Albert Baskinger, Steve McClintock, and Allen and Bonnie Sirkin will be appointed as class representatives. An appropriate order will be entered.

---

[5](...continued)
fraud claim, including the fact of damages resulting from reliance on the alleged misrepresentations, see Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 135 F.R.D. 266, 269 (3d Cir. 1998) (en banc); Kyriazi v. Western Elec. Co., 647 F.2d 388, 394-95 (3d Cir. 1981); Illinois v. Ampress Brick Co., 67 F.R.D. 457, 460 (N.D. Ill. 1975), no such problem arises in this case. Whether a class member suffered damages will not have to be determined on a trade-by-trade basis because here there are allegations of "generic misrepresentation or omission that uniformly across the market affected a security's value, causing each purchaser to be injured by the same inadequate disclosure". In re Merrill Lynch, et al. Secs. Litig., 191 F.R.D. 391, 396 (D.N.J. 1999).

14

                                               Dickinson R. Debevoise, U.S.S.D.J.

Dated: February 14, 2001