COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
JEFFREY W. HERRMANN
Park 80 Plaza West-One
Saddle Brook, NJ 07663
Telephone: 201/845-9600
201/845-9423 (fax)

Liaison Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
ARTHUR C. LEAHY
THEODORE J. PINTAR
JEFFREY D. LIGHT
SHANNON M. MATERA
FRANCIS A. DIGIACCO
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs
[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HOWARD CHARATZ, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | No. 3:05-cv-02319-MLC-TJB **(Consolidated)** |
| Plaintiff, | ) ) ) | <u>CLASS ACTION</u> |
| vs. | ) ) | DATE: September 27, 2010 TIME: 1:00 p.m. |
| AVAYA, INC., et al., | ) ) | COURTROOM: The Honorable |
| Defendants. | ) ) | Mary L. Cooper |

## MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................1

II.    FACTS .........................................................................................4

III.   THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS
       ACTION SETTLEMENTS ..........................................................4

IV.    THE SETTLEMENT IS PRESUMPTIVELY FAIR BECAUSE IT IS
       THE PRODUCT OF ARM'S-LENGTH NEGOTIATIONS AND IS
       SUPPORTED BY COUNSEL .....................................................7

V.     AN ANALYSIS OF THE *GIRSH* FACTORS CONFIRMS THAT
       THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE..........8

       A.    The Complexity, Expense, and Duration of This Litigation
             Warrant Approval of the Settlement ....................................8

       B.    The Stage of the Proceedings Weighs in Favor of Approval..............10

       C.    The Risks of Establishing Liability Weigh in Favor of Approval ......12

       D.    The Risks of Establishing Loss Causation and  Damages .................14

       E.    The Risks of Maintaining the Class Action Through Trial
             Weigh in Favor of Approval ..............................................16

       F.    The Settlement Is Reasonable in Light of the Ability of
             Defendants to Withstand a Judgment...................................17

       G.    The Settlement Is Reasonable in Light of All the Attendant
             Risks of Litigation ...........................................................17

VI.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION .......18

VII.   CONCLUSION...........................................................................19

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) ...............................................................8

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ............................................................18

*Armstrong v. Bd. of Sch. Dirs.*,
   616 F.2d 305 (7th Cir. 1980) ...............................................................7

*Austin v. Pa. Dep't of Corrs.*,
   876 F. Supp. 1437 (E.D. Pa. 1995) .......................................................7

*Backman v. Polaroid Corp.*,
   910 F.2d 10 (1st Cir. 1990) ................................................................18

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
   603 F.2d 263 (2d Cir. 1979) ...............................................................18

*Bryan v. Pittsburgh Plate Glass Co.*,
   494 F.2d 799 (3d Cir. 1974) .................................................................6

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981).............................................................................5

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)..........................................................................14

*Ehrheart v. Verizon Wireless*,
   No. 08-4323, 2010 U.S. App. LEXIS 12174 (3d Cir. June 15, 2010) ...............5

*Fisher Bros. v. Phelps Dodge Indus., Inc.*,
   604 F. Supp. 446 (E.D. Pa. 1985)..........................................................5

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975) .......................................................6, 8, 10

*In re Am. Bank Note Holographics*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001) ..................................................19

**Page**

*In re Apollo Group, Inc. Sec. Litig.,*
   No. 08-16971, slip op. (9th Cir. June 23, 2010) ................................................18

*In re Apollo Group, Inc. Sec. Litig.,*
   No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995
   (D. Ariz. Aug. 4, 2008) ....................................................................................17

*In re AT&T Corp. Sec. Litig.,*
   455 F.3d 160 (3d Cir. 2006) ................................................................................6

*In re Cendant Corp. Litig.,*
   264 F.3d 201 (3d Cir. 2001) ....................................................................6, 11, 19

*In re Chambers Dev. Sec. Litig.,*
   912 F. Supp. 822 (W.D. Pa. 1995) ....................................................................10

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
   55 F.3d 768 (3d Cir. 1995) ..............................................................................5, 7

*In re Harnischfeger Indus., Inc. Sec. Litig.,*
   212 F.R.D. 400 (E.D. Wis. 2002) ........................................................................8

*In re Ikon Office Solutions, Inc.,*
   277 F.3d 658 (3d Cir. 2002) ..............................................................................12

*In re Ikon Office Solutions, Inc., Sec. Litig.,*
   194 F.R.D. 166 (E.D. Pa. 2000) ................................................................8, 9, 19

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
   148 F.3d 283 (3d Cir. 1998) ................................................................................4

*In re Rent-Way Sec. Litig.,*
   305 F. Supp. 2d 491 (W.D. Pa. 2003) ....................................................8, 10, 11

*In re Warner Commc'ns Sec. Litig.,*
   618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) .............16

*Institutional Investors Group v. Avaya, Inc.,*
   564 F.3d 242 (3d Cir. 2009) ................................................................................2

570790_1

**Page**

*Lake v. First Nationwide Bank*,
   900 F. Supp. 726 (E.D. Pa. 1995)........................................................................7

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*,
   390 U.S. 414 (1968)..........................................................................................5

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ...............................................................16, 18

*Semerenko v. Cendant Corp.*,
   223 F.3d 165 (3d Cir. 2000) ..............................................................................14

*Walsh v. Great Atl. & Pac. Tea Co.*,
   726 F.2d 956 (3d Cir. 1983) ..............................................................................7

*Walsh v. Great Atl. & Pac. Tea Co.*,
   96 F.R.D. 632 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983)..............................6

*White v. NFL*,
   822 F. Supp. 1389 (D. Minn. 1993)..................................................................19

*Williams v. First Nat'l Bank*,
   216 U.S. 582 (1910)............................................................................................4

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
   Rule 23 ...............................................................................................................19
   Rule 23(c)(1).....................................................................................................16
   Rule 23(e)....................................................................................................1, 5, 6

## SECONDARY AUTHORITIES

*Manual for Complex Litigation* (3d ed. 1995)
   §30.41..................................................................................................................7

# I.    INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs, District No. 9, I.A. of M. & A.W. Pension Trust, UFCW Local 880 – Retail Food Employees Joint Pension Fund, UFCW Local 880 Union-Employer Pension Fund, National Elevator Industry Pension Fund, and City of Livonia Employees' Retirement System, respectfully submit this memorandum in support of their motion for final approval of the settlement of this class action for $4,500,000 in cash and approval of the Plan of Allocation of settlement proceeds ("Plan of Allocation").  The terms of the settlement are set forth in the Stipulation of Settlement dated as of March 31, 2010 (the "Stipulation").[1]  Lead Plaintiffs' counsel believe that the settlement is a highly favorable result under the circumstances and merits the approval of the Court.

This case was carefully investigated and has been vigorously litigated since its inception in April 2005.  At every stage of the Litigation, counsel for Defendants asserted aggressive defenses and expressed their belief that Lead Plaintiffs could not and should not prevail on the claims asserted.  By the time the settlement was reached, Lead Plaintiffs' counsel had conducted an extensive factual investigation; interviewed through their investigators some 35 witnesses, including former employees of Avaya;

---

[1]    Unless otherwise defined herein, capitalized terms should have the meaning ascribed to them in the Stipulation.  The Stipulation was previously provided to the Court in connection with Lead Plaintiffs' Unopposed Motion for Preliminary Approval.

litigated a complicated motion to dismiss; consulted with experts; successfully (in part) appealed the decision on Defendants' motion to dismiss; exchanged initial disclosures of discovery with Defendants; responded to discovery propounded by Defendants; filed a motion for class certification; propounded discovery to Defendants; engaged in numerous meet and confers with Defendants regarding discovery; and successfully negotiated the settlement.

As discussed herein and in the accompanying Declaration of Arthur C. Leahy in Support of Lead Plaintiffs' Motion for (A) Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds; and (B) an Award of Attorneys' Fees and Expenses ("Leahy Declaration"), Lead Plaintiffs faced significant risks and obstacles in obtaining a more favorable outcome after continued litigation.[2]  For example, Lead Plaintiffs were faced with the formidable task of proving that Defendants made materially false statements with the requisite scienter.  The Third Circuit Court of Appeals decision ("Appeals Decision")[3] drastically reduced Lead Plaintiffs' claims by limiting Lead Plaintiffs to only alleged false statements made by Defendants in March 2005 regarding pricing discounts that Avaya's business was

---

[2]    The Leahy Declaration contains a detailed description of the history of the Litigation, including the claims asserted, the proceedings during the course of the Litigation, the investigation and discovery undertaken, the settlement negotiations, and the substantial risks of continued litigation.

[3]    *Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242 (3d Cir. 2009).

facing.  Defendants denied any liability for these statements throughout the Litigation, asserting that the statements Lead Plaintiffs alleged were materially false were in fact well-founded and true at the time they were made, or otherwise inactionable, thus absolving them of any liability under the federal securities laws.  Lead Plaintiffs' ability to prove loss causation would also be a major issue going forward.  Defendants would argue that the drop in the price of Avaya's common stock resulting from the April 19, 2005 press release announcing disappointing results for Q2 2005 were caused by disclosures unrelated to Lead Plaintiffs' allegations.   Finally, Lead Plaintiffs' motion for class certification was pending at the time of settlement.  Absent settlement, Defendants would likely have opposed such motion, making it uncertain whether class certification would have been granted.

In short, Lead Plaintiffs faced numerous obstacles in proving both liability and damages.  There was no certainty, given Defendants' vigorously asserted defenses, that Lead Plaintiffs and the Class would prevail on either liability or damages or be able to proceed on a class wide basis.  The proposed settlement eliminates these and many other risks of continued litigation.

Lead Plaintiffs' counsel who are well-respected in the field and have extensive experience in prosecuting securities class actions, have concluded that the settlement is a favorable result and clearly in the best interests of the Class.  This conclusion is based on, among other things, the substantial and certain recovery obtained for the Class, an analysis of the evidence adduced to date, the legal and factual issues

- 3 -

presented, the impact of the Appeals Decision, the risk that the Court or a jury would find favor with some or all of Defendants' arguments and absolve them of liability, and counsel's past experience in prosecuting other securities class actions.

For reasons set forth herein and in the Leahy Declaration, it is respectfully submitted that the settlement is eminently fair, reasonable, and adequate to the Class and should be approved by the Court. Moreover, the Plan of Allocation, which was developed with the assistance of Lead Plaintiffs' economic and damage analysts and tracks the theory of damages asserted, is necessarily fair, reasonable, and adequate.

## II.     FACTS

The Court is respectfully referred to the Leahy Declaration for a detailed description of the history of the Litigation, the claims asserted, the motion practice, the investigation and discovery undertaken, the negotiation and substance of the settlement, and the substantial risks and uncertainties presented by and overcome in this Litigation, the risks of continued litigation, and why the settlement is in the best interest of the Class.

## III.    THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

It is well settled that "[c]ompromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 317 (3d Cir. 1998). The Third Circuit Court of Appeals recently reiterated the long standing principle that

- 4 -

there is a "strong presumption in favor of voluntary settlement agreements." *Ehrheart v. Verizon Wireless*, No. 08-4323, 2010 U.S. App. LEXIS 12174 at *8 (3d Cir. June 15, 2010). "This presumption is especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Id*. at *9 (citation omitted).

Federal Rule of Civil Procedure 23(e) provides that a certified class action shall not be dismissed or compromised without the approval of the court. "The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings." *Ehrheart*, 2010 U.S. App. LEXIS 12174, at *9. *See also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) ("*GMC Trucks*"). The ultimate determination whether a proposed class action settlement warrants approval, resides in the court's discretion. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424-25 (1968).

While this Court has discretion in determining whether to approve the settlement, it should be hesitant to substitute its judgment for that of the parties who negotiated the settlement. *Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446, 452 (E.D. Pa. 1985). "Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. They do not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88

- 5 -

n.14 (1981) (citation omitted); *Walsh v. Great Atl. & Pac. Tea Co.*, 96 F.R.D. 632, 642-43 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983).  The court may rely on the judgment of experienced counsel and should avoid transforming the hearing on the settlement into a trial on the merits.  *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 804 (3d Cir. 1974); *Walsh*, 96 F.R.D. at 642.

Ultimately, the court must consider whether the proposed settlement is "fair, reasonable, and adequate."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001).  In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), the Third Circuit Court of Appeals advised district courts to consider the following factors in deciding whether to approve a proposed settlement of a class action under Rule 23(e):

> "(1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . ."

*Id.* at 157 (citation omitted).  *See also In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164-65 (3d Cir. 2006).

As set forth below and in the Leahy Declaration, the settlement is a favorable result, is presumptively fair, and clearly satisfies the *Girsh* factors.  Substantial doubt exists as to whether any greater recovery could have been obtained against Defendants in the absence of the settlement, especially in light of the difficulty of proving the

- 6 -

falsity of the alleged statements, Defendants' scienter, and loss causation. Accordingly, the settlement is superior to another very real possibility – little or no recovery.

## IV.   THE SETTLEMENT IS PRESUMPTIVELY FAIR BECAUSE IT IS THE PRODUCT OF ARM'S-LENGTH NEGOTIATIONS AND IS SUPPORTED BY COUNSEL

A proposed class action settlement is considered presumptively fair, where, as here, the parties, through capable counsel, have engaged in arm's-length negotiations. *See, e.g.*, *GMC Trucks*, 55 F.3d at 785; *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 965 (3d Cir. 1983). *See also Manual for Complex Litigation* §30.41, at 237 (3d ed. 1995). This Litigation was vigorously contested for some five years before an agreement-in-principle to resolve the Litigation was reached. The settlement resulted from arm's-length negotiations between highly experienced and capable counsel with a firm understanding of the strengths and weaknesses of Lead Plaintiffs' claims and the significant risks of continued litigation. The principal lawyers involved in the settlement negotiations are all well known for their effective representation of their clients, and have many years of experience in the effective prosecution, defense, and resolution of complex securities actions.

"[T]he court is [also] entitled to rely heavily on the opinion of competent counsel." *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980); *see also Austin v. Pa. Dep't of Corrs.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995); *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995). Lead Plaintiffs' counsel's

- 7 -

"assessment of the settlement as fair and reasonable is entitled to considerable weight." *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003). Lead Plaintiffs' counsel, who have extensive experience prosecuting securities class actions, believe that the settlement is a favorable result and in the best interest of the Class. In reaching this conclusion, Lead Plaintiffs' counsel considered the strengths and weaknesses of Lead Plaintiffs' claims, the risks of establishing liability and damages in light of the Appeals Decision, various arguments raised by Defendants, as well as the risks that the Court or a jury may have ruled in favor of Defendants on some or all of the major issues resulting in no or little recovery for the Class.

## V.   AN ANALYSIS OF THE *GIRSH* FACTORS CONFIRMS THAT THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.   The Complexity, Expense, and Duration of This Litigation Warrant Approval of the Settlement

There is no doubt that this Litigation, like all securities class actions, is complex. *See, e.g.*, *In re Harnischfeger Indus., Inc. Sec. Litig.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted."). Indeed, courts have recognized that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000). As former United States Supreme Court Justice Sandra Day O'Connor noted in *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572

- 8 -

F.3d 221, 235 (5th Cir. 2009), "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action."

If not for this settlement, the case would have continued to be fiercely contested by all parties.  While Lead Plaintiffs have already expended substantial amounts of time and money to reach the point of settlement, further significant time and expenses would be incurred to complete pre-trial proceedings and conduct a trial.  As the court noted in *Ikon*, which is applicable here:

> In the absence of settlement, this matter will likely extend for . . . years longer with significant financial expenditures by both defendants and plaintiffs.  This is partly due to the inherently complicated nature of large class actions alleging securities fraud: there are literally thousands of shareholders, and any trial on these claims would rely heavily on the development of a paper trial [sic] through numerous public and private documents.

194 F.R.D. at 179.

The securities claims advanced by Lead Plaintiffs involve complex legal and factual issues, which would require additional document discovery, depositions, and extensive expert discovery and testimony.   After completion of discovery, Defendants' expected motion for summary judgment would have to be briefed and argued, a pre-trial order would have to be prepared, proposed jury instructions would have to be submitted, and motions *in limine* would have to be filed and argued.  Substantial time and expense would need to be expended in preparing the case for trial.  The trial itself would have been long, expensive, and uncertain.

Moreover, even if the jury returned a favorable verdict after trial, there is no question that any verdict would be the subject of numerous post-trial motions and a complex multi-year appellate process. This is especially true because only a few Private Securities Litigation Reform Act of 1995 ("PSLRA") cases have proceeded to trial, and many of the issues specific to the application and effect of certain provisions of the PSLRA are novel, with no appellate authority interpreting them. Taking into account the likelihood of appeals, absent this settlement, this case likely would have continued for years despite the efforts of the Court and the parties to speed the process. Thus, "[i]t is safe to say, in a case of this complexity, the end of that road might be miles and years away." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 837 (W.D. Pa. 1995). As a result, the settlement secures a sizeable recovery for the Class undiminished by further expenses and without the delays, risks, and uncertainties of continued litigation.

## B.     The Stage of the Proceedings Weighs in Favor of Approval

The third *Girsh* factor requires the Court "to consider the degree to which the litigation has developed prior to settlement." *Rent-Way*, 305 F. Supp. 2d at 502.[4]

---

[4]     The second *Girsh* factor is the reaction of the class to the settlement. As set forth in the previously filed Declaration of Carole K. Sylvester Re A) Mailing of the Notice of Proposed Settlement of Class Action and the Proof of Claim and Release Form, and B) Publication of the Summary Notice, previously submitted to the Court, over 25,500 settlement notices have been mailed to potential members of the Class. While the deadline for filing objections does not expire until July 26, 2010, to date,

"The goal here is to determine 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Rent-Way*, 305 F. Supp. 2d at 502 (quoting *Cendant*, 264 F.3d at 235).  In this action both the knowledge of Lead Plaintiffs' counsel and the proceedings themselves reached a stage where an intelligent evaluation of the strengths and weaknesses of the Class's claims and the propriety of the settlement could be made.

As detailed herein and in the Leahy Declaration, Lead Plaintiffs' counsel conducted significant informal discovery and investigation on the matters alleged, even though throughout much of the Litigation, discovery was stayed pursuant to the PSLRA.  Lead Plaintiffs' counsel also fully briefed Defendants' motion to dismiss and an appeal to the Third Circuit Court of Appeals which further highlighted the factual and legal issues in the Litigation.  The parties also exchanged initial disclosures of discovery and participated in extensive settlement negotiations where the strengths and weaknesses of the parties' respective claims and defenses were explored.  Thus, at the time of settlement Lead Plaintiffs' counsel had a full understanding of the strengths and weaknesses of the Class's claims, as well as the difficulties they would face in obtaining a more favorable result after continued litigation.  Having sufficient

---

counsel have not received a single objection to any aspect of the settlement.  Pursuant to the schedule set by the Court, on or before September 20, 2010, Lead Plaintiffs' counsel will respond to objections, if any, received by the deadline for submission thereof.

information to fairly evaluate the strengths and weaknesses of the Class's claims, Lead Plaintiffs' counsel have managed to settle this Litigation on terms very favorable to the Class under difficult and challenging circumstances.

### C.    The Risks of Establishing Liability Weigh in Favor of Approval

While Lead Plaintiffs believe that they had a strong case as to liability, as in every complex case of this kind, they faced formidable obstacles to proving Defendants' liability.  In order to establish a §10(b) claim, plaintiffs must prove that defendants: (1) made a misstatement or an omission of a material fact; (2) with scienter; (3) in connection with the purchase or sale of a security; (4) upon which the plaintiffs reasonably relied; and (5) that proximately caused their injuries.  *In re Ikon Office Solutions, Inc.*, 277 F.3d 658, 667 (3d Cir. 2002).

Whether Lead Plaintiffs would have been able to establish liability was a real uncertainty in this case.  Defendants vehemently denied any and all liability, asserting that the statements regarding pricing pressure that Avaya faced from competitors and the granting of unusual 20%-40% discounts about which Lead Plaintiffs complain were not false at the time they were made.  Specifically, Defendants assert that the discounts were not unusual compared to prior years and any price concessions were in line with the Company's prior practices.

Even if Lead Plaintiffs established the falsity of the statements, they would also have to prove that the Defendants acted with the requisite scienter.  The difficulty of

- 12 -

proving scienter cannot be underestimated as proof of scienter is always complex. Here, because Defendants did not sell any stock during the Class Period, a jury may find that Defendants did not act with the requisite scienter because they did not profit from the alleged fraud.

While Lead Plaintiffs believe that based on the evidence adduced to date, including interviews with former Avaya employees, they had a strong case as to liability and would be able to prove that Defendants made false and misleading statements about the unusual price discounting at Avaya, getting past summary judgment and establishing liability at trial would by no means be guaranteed.

Defendants have adamantly denied any liability and have asserted from the outset of the Litigation that they possess absolute defenses to Lead Plaintiffs' claims. Lead Plaintiffs were aware that Defendants would present counter evidence and other substantial obstacles to obtaining a judgment in their favor at trial. Moreover, there was no certainty that additional discovery would tend to support or disprove Lead Plaintiffs' allegations. In order to prove their case, Lead Plaintiffs would have to rely on significant testimony from former Avaya employees and other witnesses, many of whom would be testifying about matters that occurred more than five years ago. As a result of the significant time between the events of interest and any deposition or trial, the ability, as well as willingness, of many witnesses to testify completely about those events would be impaired. The fact that Avaya no longer exists as the company it was during the Class Period and is now a privately held company further complicated Lead

- 13 -

Plaintiffs' ability to prove their claims and clouded Lead Plaintiffs' ability to collect on any favorable judgment. These issues could seriously affect Lead Plaintiffs' ability to successfully prosecute their claims.

In short, Lead Plaintiffs faced numerous obstacles in proving liability if litigation continued. There was no certainty, given Defendants' vigorously asserted defenses, that Lead Plaintiffs and the Class would prevail on liability. The settlement eliminates these and many other risks of continued litigation.

### D.    The Risks of Establishing Loss Causation and  Damages

Even if Lead Plaintiffs were successful in establishing liability, they faced substantial risks in proving loss causation and damages.  The determination of damages is a complicated and uncertain process, involving the analysis of many subjective factors.  Damages in a §10(b) action are measured by "the difference between the purchase price and the 'true value' of the security [*i.e.*, value absent the fraud] at the time of the purchase." *Semerenko v. Cendant Corp.*, 223 F.3d 165, 184 (3d Cir. 2000).

Lead Plaintiffs must also show that the alleged false statements or omissions caused the damages or loss causation.  Absent settlement, proving loss causation would be a major risk faced by Lead Plaintiffs.  The Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) and the subsequent cases interpreting *Dura* have made proving loss causation even more difficult and uncertain than it was in the past.  Lead Plaintiffs' ability to prove loss causation in this case was

- 14 -

particularly problematic given that Defendants would certainly argue and present expert testimony that the disappointing results for Q2 2005 announced in an April 19, 2005 press release and conference call were the result of an unexpected decision by certain distributors not to "reload" at the end of March or problems relating to integrating Tenovis GmbH & Co. KG and not related to Lead Plaintiffs' pricing discount allegations. Defendants would likely further assert that Avaya's fiscal 2005 performance was not indicative of fraud because revenue grew 20% and earnings per share increased from $0.51 to $0.58. Thus, Defendants would argue that Avaya's stock price decline after the Company's April 19, 2005 press release and conference call was caused by factors unrelated to the alleged fraud, thus negating a critical element of Lead Plaintiffs' claims.

The determination of loss causation and damages is a complicated and uncertain process, almost always involving conflicting expert testimony from defendants and plaintiffs. Expert testimony could rest on many subjective assumptions, any of which could potentially be rejected by a jury as speculative or unreliable. Lead Plaintiffs would have likely faced a motion *in limine* by Defendants to preclude Lead Plaintiffs' damage experts' testimony under the *Daubert* test and risked a decision that a valuation model might not be admissible in evidence. Even if Lead Plaintiffs survived the *Daubert* motion, at trial the loss causation and damage assessments of Lead Plaintiffs' and Defendants' experts were sure to vary substantially, and in the end, this crucial element at trial would be reduced to a "battle of experts." The reaction of a

- 15 -

jury to such expert testimony is highly unpredictable and in such a battle, Lead Plaintiffs' counsel recognize the possibility that a jury could be swayed by convincing experts for the Defendants, and find that there were no damages or only a fraction of the amount of damages Lead Plaintiffs contended or to show that the losses were attributable to factors other than the alleged false and misleading statements. *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (finding no loss causation and overturning $81 million jury verdict).[5]

### E.   The Risks of Maintaining the Class Action Through Trial Weigh in Favor of Approval

Federal Rule of Civil Procedure 23(c)(1) provides that a class certification order may be altered or amended any time before a decision on the merits.  Thus, in any class action suit, even if a class is initially certified, there is always a risk that a class will be modified or decertified prior to a decision on the merits.  While Lead Plaintiffs believe that their motion for class certification would have been granted, there was no guarantee that class certification would be maintained throughout trial since courts may exercise their discretion to re-evaluate the appropriateness of class certification.

---

[5]   *See also*, *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) ("it is virtually impossible to predict with any certainty which [experts'] testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions"), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

**F.     The Settlement Is Reasonable in Light of the Ability of Defendants to Withstand a Judgment**

As recent corporate debacles such as Lehman Brothers, Enron, Tyco, and WorldCom demonstrate, in the current corporate and economic environment no one can predict in these unstable times whether a much larger judgment entered several years from now would be collectable.  As a result, even if Lead Plaintiffs were successful and obtained a substantial judgment after trial and the exhaustion of appeals, there was a risk that it would be a Pyrrhic victory.

**G.     The Settlement Is Reasonable in Light of All the Attendant Risks of Litigation**

The settlement must be balanced against all the risks of continued litigation.  As discussed herein and in the Leahy Declaration, Lead Plaintiffs faced considerable risks in proving the falsity of the alleged misstatements, Defendants' scienter, loss causation and damages.  Lead Plaintiffs recognized the possibility that a jury could find favor with Defendants' arguments at trial and find that no liability existed or even if liability was established, there were no or little damages.

Moreover, many securities cases have been lost at trial, on post-trial motions, or on appeal.  In *In re Apollo Group, Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008), the court on a motion for judgment as matter of law, overturned a jury verdict of $277 million in favor of shareholders

- 17 -

based on insufficient evidence presented at trial to establish loss causation.[6]  Similarly,

in *Robbins*, 116 F.3d 1441, the Eleventh Circuit overturned an $81 million jury verdict

for the class on loss causation grounds and ordered the entire litigation dismissed.  As

discussed herein, loss causation would have been a major issue going forward in this

case.   In another action, the class won a $38 million jury verdict (exclusive of

prejudgment interest) and a motion for judgment *n.o.v.* was denied.   However, on

appeal, the judgment was reversed and the case dismissed, a total loss after ten years

of active litigation.  *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990).  *See also*

*Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning

plaintiffs' verdict obtained after two decades of litigation); *Berkey Photo, Inc. v.*

*Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment

after trial).

## VI.   THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

The Plan of Allocation establishes the method by which the Net Settlement

Fund will be distributed to Class Members submitting acceptable Proof of Claim

forms.  The Plan of Allocation was set forth in the Notice of Proposed Settlement of

Class Action mailed to Class Members.  The Plan of Allocation will distribute the

---

[6]      Although the Ninth Circuit Court of Appeals recently reversed the trial court's
decision, plaintiffs will still likely face appeal of the jury verdict.  *See In re Apollo*
*Group, Inc. Sec. Litig.*, No. 08-16971, slip op. (9th Cir. June 23, 2010).

settlement proceeds to those Class Members who suffered economic losses as a result of the alleged fraud.  Assessment of a plan of allocation in a class action under Federal Rule of Civil Procedure 23 is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair and reasonable.  *See Ikon*, 194 F.R.D. at 184; *Cendant*, 264 F.3d at 231.  An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel.  *White v. NFL*, 822 F. Supp. 1389, 1420-424 (D. Minn. 1993); *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001).

The objective of a plan of allocation is to provide an equitable basis upon which to distribute the settlement fund among eligible class members.  Here, the Plan of Allocation was developed by Lead Counsel with the assistance of their economic and damage analysts and reflects an assessment of the damages that could have been recovered at trial under the theories asserted in the case by Lead Plaintiffs.  The Plan of Allocation will result in a fair distribution of the available proceeds among those Class Members who submit valid claims and therefore should be approved.

## VII.   CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court approve the settlement and the Plan of Allocation as fair, reasonable, and adequate and in the best interests of the Class.

DATED:  July 12, 2010    Respectfully submitted,

           COHN LIFLAND PEARLMAN
             HERRMANN & KNOPF LLP
           PETER S. PEARLMAN
           JEFFREY W. HERRMANN


             s/ Peter S. Pearlman
            PETER S. PEARLMAN

           Park 80 Plaza West-One
           Saddle Brook, NJ  07663
           Telephone:  201/845-9600
           201/845-9423 (fax)

           Liaison Counsel

           ROBBINS GELLER RUDMAN
             & DOWD LLP
           ARTHUR C. LEAHY
           THEODORE J. PINTAR
           JEFFREY D. LIGHT
           SHANNON M. MATERA
           FRANCIS A. DIGIACCO
           655 West Broadway, Suite 1900
           San Diego, CA  92101
           Telephone:  619/231-1058
           619/231-7423 (fax)

           Lead Counsel for Plaintiffs

           VANOVERBEKE MICHAUD
             & TIMMONY, P.C.
           MICHAEL J. VANOVERBEKE
           THOMAS C. MICHAUD
           79 Alfred Street
           Detroit, MI  48201
           Telephone:  313/578-1200
           313/578-1201 (fax)

O'DONOGHUE & O'DONOGHUE LLP
DONALD J. CAPUANO
4748 Wisconsin Avenue, N.W.
Washington, DC  20016
Telephone:  202/362-0041
202/362-2640 (fax)

SCHWARZWALD McNAIR
  & FUSCO LLP
EBEN O. McNAIR IV
616 Penton Media Building
1330 East Ninth Street
Cleveland, OH  44114-1503
Telephone:  216/566-1600
216/566-1814 (fax)

Additional Counsel for Plaintiffs