COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
JEFFREY W. HERRMANN
Park 80 Plaza West-One
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)

Liaison Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
ARTHUR C. LEAHY
THEODORE J. PINTAR
JEFFREY D. LIGHT
SHANNON M. MATERA
FRANCIS A. DIGIACCO
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs
[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOWARD CHARATZ, Individually and On Behalf of All Others Similarly Situated, ) <br> Plaintiff, ) <br> vs. ) <br> AVAYA, INC., et al., ) <br> Defendants. ) | No. 3:05-cv-02319-MLC-TJB <br> **(Consolidated)** <br><br> <u>CLASS ACTION</u> <br><br> DATE:  September 27, 2010 <br> TIME:  1:00 p.m. <br> COURTROOM:  The Honorable <br> Mary L. Cooper |

## MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

571310_1

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................1

II.  THE STANDARDS GOVERNING THE AWARD OF
ATTORNEYS' FEES IN COMMON FUND CASES...................................4

    A.  Lead Plaintiffs' Counsel Are Entitled to a Fee From the
Common Fund They Created ................................................................4

    B.  The Court Should Award Attorneys' Fees Using the Percentage
Approach ................................................................................6

III.  THE REQUESTED 25% FEE IS FAIR AND REASONABLE
UNDER THE PERCENTAGE-OF-RECOVERY METHOD.......................8

IV.  THE REQUESTED 25% FEE IS FAIR AND REASONABLE
UNDER THE THIRD CIRCUIT'S *GUNTER* FACTORS ...........................10

    A.  The Size and Nature of the Common Fund Created and the
Number of Persons Benefited by the Settlement ...............................10

    B.  The Skill and Efficiency of Lead Plaintiffs' Counsel .......................12

    C.  The Complexity and Duration of the Litigation.................................14

    D.  The Risk of Non-Payment.................................................................15

    E.  The Time Devoted to This Case by Lead Plaintiffs' Counsel
Was Significant ................................................................................20

    F.  Awards in Similar Cases ...................................................................21

        1.  The Requested Fee of 25% of the Settlement Fund is at
the Low End of Fees Typically Awarded in Actions of
This Nature........................................................................21

        2.  The Requested 25% Fee Is at the Low End of Contingent
Fee Arrangements Negotiated in Non-Class Litigation............23

**Page**

V.    THE REQUESTED FEE IS REASONABLE UNDER THE
      LODESTAR CROSS-CHECK ...................................................................24

      A.    Hours Reasonably Expended by Counsel ...........................................25

      B.    Calculating the "Base" Lodestar .......................................................25

      C.    The Lodestar Multiplier ....................................................................26

      D.    Performing the Lodestar Cross-Check ..............................................26

VI.   LEAD PLAINTIFFS' COUNSEL'S APPLICATION FOR
      REASONABLY INCURRED LITIGATION EXPENSES SHOULD
      BE APPROVED ..................................................................................27

VII.  CONCLUSION ..................................................................................30

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abrams v. Lightolier, Inc.*,
   50 F.3d 1204 (3d Cir. 1995) ..............................................................28

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) .........................................................19

*Aviva Partners LLC v. Exide Techs.*,
   No. 3:05-cv-03098-MLC-LHG, slip op. (D.N.J. June 23, 2009) ......................21

*Backman v. Polaroid Corp.*,
   910 F.2d 10 (1st Cir. 1990) ..............................................................19

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985) ........................................................................5

*Behrens v. Wometco Enters., Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ..............10

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
   603 F.2d 263 (2d Cir. 1979) .............................................................19

*Blum v. Stenson*,
   465 U.S. 886 (1984) ..............................................................6, 23, 26

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) .......................................................................5, 6

*Bryant v. Avado Brands, Inc.*,
   100 F. Supp. 2d 1368 (M.D. Ga. 2000), *rev'd on other grounds sub nom.*
   *Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001) ...........................................17

*Camden I Condo. Ass'n v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ...........................................................8

*Cent. R.R. & Banking Co. v. Pettus*,
   113 U.S. 116 (1885) ........................................................................5

- iii -

**Page**

*Cullen v. Whitman Med. Corp.*,
    197 F.R.D. 136 (E.D. Pa. 2000)............................................................12, 21, 28

*Dolgow v. Anderson*,
    43 F.R.D. 472 (E.D.N.Y. 1968) ........................................................................5

*ETSI Pipeline Project v. Burlington N., Inc.*,
    No. B-84-979-CA, 1989 U.S. Dist. LEXIS 18796
    (E.D. Tex. June 6, 1989) ...............................................................................23

*Florin v. Nationsbank, N.A.*,
    34 F.3d 560 (7th Cir. 1994) ............................................................................8

*Geffon v. Micrion Corp.*,
    249 F.3d 29 (1st Cir. 2001)............................................................................19

*Gottlieb v. Barry*,
    43 F.3d 474 (10th Cir. 1994) ..........................................................................8

*Greebel v. FTP Software, Inc.*,
    194 F.3d 185 (1st Cir. 1999).........................................................................19

*Green v. Nuveen Advisory Corp.*,
    295 F.3d 738 (7th Cir. 2002) ........................................................................19

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000) ...........................................................6, 9, 10, 24

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ............................................................................28

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983).................................................................................10, 25

*In re Aetna Inc., Sec. Litig.*,
    No. MDL 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001)......................1, 21, 27

*In re Apple Computer Sec. Litig.*,
    No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608
    (N.D. Cal. Sept. 6, 1991) ..............................................................................19

571310_1

**Page**

*In re AremisSoft Corp. Sec. Litig.*,
  210 F.R.D. 109 (D.N.J. 2002)...............................................................5, 6, 7, 12

*In re AT&T Corp. Sec. Litig.*,
  455 F.3d 160 (3d Cir. 2006) ...........................................................................6, 7

*In re ATI Techs., Inc. Sec. Litig.*,
  No. 01-2541, 2003 U.S. Dist. LEXIS 7062 (E.D. Pa. Apr. 28, 2003) ..............21

*In re Cell Pathways, Inc., Sec. Litig. II*,
  No. 01-CV-1189, 2002 U.S. Dist. LEXIS 18359
  (E.D. Pa. Sept. 24, 2002) ...................................................................................21

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ...............................................................................7

*In re Computron Software, Inc., Sec. Litig.*,
  6 F. Supp. 2d 313 (D.N.J. 1998).........................................................................6

*In re Comshare Inc. Sec. Litig.*,
  183 F.3d 542 (6th Cir. 1999) .............................................................................19

*In re Digi Int'l, Inc. Sec. Litig.*,
  14 Fed. Appx. 714 (8th Cir. 2001)......................................................................19

*In re EquiMed, Inc. Sec. Litig.*,
  No. 98-cv-5374 (NS), 2003 U.S. Dist. LEXIS 2998
  (E.D. Pa. Mar. 3, 2003).......................................................................................21

*In re Fine Paper Antitrust Litig.*,
  751 F.2d 562 (3d Cir. 1984) ...............................................................................26

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ...................................................................5, 6, 9, 21

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000)................................................................. *passim*

**Page**

*In re JDS Uniphase Corp. Sec. Litig.*,
No. C-02-1486 CW (EDL), Verdict Questions Form
(N.D. Cal. Nov. 27, 2007)..................................................................18

*In re Mobilemedia Sec. Litig.*,
No. 96-5723 (AJL), slip op. (D.N.J. Feb. 24, 2000).........................................22

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) .....................................................7, 9, 26

*In re Prudential-Bache Energy Income P'ships*,
No. 888, 1994 WL 202394 (E.D. La. May 18, 1994).......................................16

*In re Residential Doors Antitrust Litig.*,
No. 94-3744, 1998 WL 151804 (E.D. Pa. Apr. 2, 1998) .................................28

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001).......................................................13, 22

*In re Rite Aid Corp. Sec. Litig.*,
362 F. Supp. 2d 587 (E.D. Pa. 2005).................................................27

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) .............................................22, 25, 26

*In re RJR Nabisco Sec. Litig.*,
No. MDL 818 (MBM), 1992 U.S. Dist. LEXIS 12702
(S.D.N.Y. Aug. 24, 1992)...............................................................23

*In re Safety Components Int'l, Inc.*,
166 F. Supp. 2d 72 (D.N.J. 2001)....................................................28

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza
Hotel Fire Litig.*,
56 F.3d 295 (1st Cir. 1995)..............................................................8

*In re United States Bioscience Sec. Litig.*,
155 F.R.D. 116 (E.D. Pa. 1994)......................................................23

**Page**

*In re Warner Commc'ns Sec. Litig.*,
　　618 F. Supp. 735 (S.D.N.Y. 1985),
　　*aff'd*, 798 F.2d 35 (2d Cir. 1986) ........................................................13, 15, 26

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
　　19 F.3d 1291 (9th Cir. 1994) ........................................................................8

*J.I. Case Co. v. Borak*,
　　377 U.S. 426 (1964) ........................................................................................5

*Levitin v. Painewebber, Inc.*,
　　159 F.3d 698 (2d Cir. 1998) ........................................................................19

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
　　487 F.2d 161 (3d Cir. 1973) ................................................................7, 24, 25

*Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*,
　　540 F.2d 102 (3d Cir. 1976) ......................................................................7, 24

*Longman v. Food Lion, Inc.*,
　　197 F.3d 675 (4th Cir. 1999) ......................................................................19

*Maley v. Del Global Techs. Corp.*,
　　186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................................................13

*Mills v. Elec. Auto-Lite Co.*,
　　396 U.S. 375 (1970) ........................................................................................5

*Missouri v. Jenkins*,
　　491 U.S. 274 (1989) ......................................................................................26

*New England Health Care Employees Pension Fund v.
Fruit of the Loom, Inc.*,
　　234 F.R.D. 627 (W.D. Ky. 2006) ................................................................28

*Phillips v. LCI Int'l, Inc.*,
　　190 F.3d 609 (4th Cir. 1999) ......................................................................19

*Rawlings v. Prudential-Bache Props.*,
　　9 F.3d 513 (6th Cir. 1993) ............................................................................8

- vii -

**Page**

*Robbins v. Koger Props.*,
　116 F.3d 1441 (11th Cir. 1997) ........................................................................19

*Shuster v. Symmetricom, Inc.*,
　35 Fed. Appx. 705 (9th Cir. 2002) .....................................................................19

*Silver v. H&R Block*,
　105 F.3d 394 (8th Cir. 1997) ............................................................................19

*Sprague v. Ticonic Nat'l Bank*,
　307 U.S. 161 (1939) ..........................................................................................5

*Sutton v. Bernard*,
　504 F.3d 688 (7th Cir. 2007) ............................................................................16

*Swedish Hosp. Corp. v. Shalala*,
　1 F.3d 1261 (D.C. Cir. 1993) .............................................................................8

*Ward v. Succession of Freeman*,
　854 F.2d 780 (5th Cir. 1988) ............................................................................19

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
　§78u-4(a)(6) ........................................................................................................8

## SECONDARY AUTHORITIES

1 Alba Conte, *Attorney Fee Awards* (2d ed. 1993)
　§2.02 ...................................................................................................................6

Declaration of Harry Reasoner, dated Nov. 30, 1990
(submitted in *In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
　No. MDL 551 (D. Ariz.)) ..................................................................................24

**Page**

Denise N. Martin, Vinita M. Juneja, Todd S. Foster, Frederick C.
Dunbar, *Recent Trends IV: What Explains Filings and Settlements
in Shareholder Class Actions?* (NERA 1996) ......................................................22

Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*,
108 F.R.D. 237 (Oct. 8, 1985) .......................................................................6, 8

Third Circuit Task Force Report, *Selection of Class Counsel*,
208 F.R.D. 340 (Jan. 15, 2002) .........................................................................8

# I.    INTRODUCTION

Lead Plaintiffs' counsel have succeeded in obtaining a Settlement Fund of $4.5 million, plus all interest earned thereon, for the benefit of the Class.[1]  This is a highly favorable result in the face of great risk and is a credit to Lead Plaintiffs' counsel's vigorous, persistent and skilled efforts who now respectfully move this Court for an award of attorneys' fees in the amount of 25% of the Settlement Fund plus payment of their litigation expenses incurred in prosecuting this Litigation in the amount of $179,329.86, plus interest on both amounts.[2]

The requested fee is well within the range of percentages awarded in class actions in this Circuit and District, as well as numerous decisions throughout the country, and is the appropriate method of compensating counsel.[3]  Indeed, "awards of thirty percent are commonly awarded in other settlements of securities fraud cases."[4]

---

[1]    Submitted herewith in support of approval of the proposed settlement is the Memorandum of Law in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds ("Settlement Brief").

[2]    Unless otherwise noted all terms used herein are defined in the Stipulation of Settlement dated as of March 31, 2010 (the "Stipulation") unless otherwise indicated.

[3]    Attached hereto as Appendix A is a listing of cases where courts in class actions in this Circuit and other circuits have awarded fees of 25% or more of the settlement fund.

[4]    *In re Aetna Inc., Sec. Litig.*, No. MDL 1219, 2001 WL 20928, at *14 (E.D. Pa. Jan. 4, 2001) (court awarded 30% of a $82.5 million settlement).

The amount requested is especially warranted in the light of the recovery obtained for the Class, the extensive efforts of counsel in obtaining this favorable result, and the significant risks in bringing and prosecuting this Litigation.  Absent this settlement, continued litigation through discovery, summary judgment, trial and appeals would have likely taken several more years at considerable expense without the Class receiving the benefits of the settlement, thus creating the very real risk that the Class would ultimately receive less, or even no recovery.

This Litigation has been vigorously litigated and fiercely contested for some five years.  Prosecution of this Litigation was undertaken by Lead Plaintiffs' counsel on a wholly contingent basis and was extremely risky and difficult from the outset. The Litigation is subject to the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA").  The effect of the PSLRA is to make it harder for investors to bring and successfully resolve securities class actions.  A study of securities class actions filed after the passage of the PSLRA between 1996 through 2001, found that 35% of the cases filed were dismissed in defendants' favor.  *See* Securities Class Action Case Filings 2007: A Year in Review, at 3 (Cornerstone Research 2007) [http://securities.cornerstone.com/pdfs/YIR2007.pdf].  Indeed, Lead Plaintiffs faced and overcame this very risk by successfully (in part) appealing the dismissal of their claims.

The prosecution and settlement of this Litigation against Defendants required great skill and extensive efforts by Lead Plaintiffs' counsel.  During the course of the

Litigation, Lead Plaintiffs' counsel (1) conducted an extensive investigation into the facts alleged; (2) with the assistance of private investigators interviewed some 35 witnesses; (3) drafted a fact specific Consolidated Complaint for Violations of the Federal Securities Laws ("Complaint"); (4) consulted with in-house and outside experts in damages and materiality; (5) thoroughly researched the law pertinent to the claims and defenses asserted; (6) litigated, briefed and argued a complicated motion to dismiss the Complaint; (7) successfully (in part) appealed the granting of Defendants' motion to dismiss; (8) served written discovery requests on Defendants; (9) met and conferred with Defendants concerning the discovery requests; (10) responded to discovery requests from Defendants; (11) filed a motion for class certification; (12) participated in arm's-length settlement negotiations; and (13) negotiated the final terms of the settlement contained in the Stipulation.[5]  Indeed, Lead Plaintiffs' counsel and their paraprofessionals combined have expended over 2,200 hours in the prosecution of this Litigation with a resulting lodestar of slightly more than $1,180,000.  Therefore, the fee award requested by Lead Plaintiffs' counsel (25% or

---

[5]     The efforts of counsel in achieving this settlement are set forth in greater detail in the accompanying Declaration of Arthur C. Leahy in Support of Lead Plaintiffs' Motion for (A) Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds; and (B) an Award of Attorneys' Fees and Expenses ("Leahy Declaration").

$1,125,000) is slightly less than the lodestar in the case and results in a so called "negative multiplier."

Lead Plaintiffs' counsel firmly believe that the settlement is the result of their creative and diligent efforts, as well as their reputations as attorneys who are unwavering in their dedication to the interests of the class and unafraid to zealously prosecute a meritorious case through trial and subsequent appeals.  In a case asserting claims based on complex legal and factual issues which were opposed by highly skilled and experienced defense counsel, Lead Plaintiffs' counsel succeeded in securing a highly favorable result for the Class under difficult and challenging circumstances.

For all the reasons set forth herein, in the Leahy Declaration and the Settlement Brief, Lead Plaintiffs' counsel respectfully submit that the requested attorneys' fees are fair and reasonable under the applicable legal standards and therefore, should be awarded by the Court.  Moreover, the expenses requested are reasonable in amount and were necessarily incurred for the successful prosecution of the Litigation and therefore, should be approved.

## II.    THE STANDARDS GOVERNING THE AWARD OF ATTORNEYS' FEES IN COMMON FUND CASES

### A.    Lead Plaintiffs' Counsel Are Entitled to a Fee From the Common Fund They Created

It is well-settled that an attorney who maintains a suit that results in the creation of a fund or benefit in which others have a common interest may obtain fees from that

- 4 -

common fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). *See also Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392-93 (1970); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939).

Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature. *See*, *e.g.*, *Dolgow v. Anderson*, 43 F.R.D. 472, 481-84 (E.D.N.Y. 1968). Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).

Courts in this Circuit and District have consistently adhered to these teachings. *See*, *e.g.*, *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 128 (D.N.J. 2002) ("Attorneys who represent a class and aid in the creation of a settlement fund are entitled to compensation for legal services offered to the settlement fund under the common fund doctrine.") (citing *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 n.39 (3d Cir. 1995) ("*GMC Trucks*")); *In re Ikon Office*

- 5 -

*Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) ("[T]here is no doubt that attorneys may properly be given a portion of the settlement fund in recognition of the benefit they have bestowed on class members."); *In re Computron Software, Inc., Sec. Litig.*, 6 F. Supp. 2d 313, 321 (D.N.J. 1998) (same).

The ultimate determination of the proper amount of attorneys' fees, of course, rests within the sound discretion of the district court. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000); *GMC Trucks*, 55 F.3d at 821; *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 168-69 (3d Cir. 2006); *AremisSoft*, 210 F.R.D. at 128.

**B.     The Court Should Award Attorneys' Fees Using the Percentage Approach**

The Supreme Court has also consistently held that where a common fund has been created for the benefit of a class as a result of counsel's efforts, the award of counsel's fees should be determined as a percentage of the fund. *See*, *e.g.*, *Boeing*, 444 U.S. at 478-79.  Indeed, by 1984 this point was so well established that the Supreme Court needed no more than a footnote to address it in *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class."). *See also* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 242 (Oct. 8, 1985) ("Task Force Report") (fee awards in common fund cases have historically been computed based upon a percentage of the fund); 1 Alba Conte, *Attorney Fee Awards* §2.02, at 31-32 (2d ed. 1993) (same).

- 6 -

The Third Circuit and district courts within it have repeatedly approved the percentage-of-recovery method of awarding fees in common fund securities fraud cases.  *See, e.g., AT&T*, 455 F.3d at 164 ("In common fund cases such as this one, the percentage-of-recovery method is generally favored.").  In *In re Cendant Corp. Litig.*, 264 F.3d 201, 220 (3d Cir. 2001) the court noted "[f]or the past decade, counsel fees in securities litigation have generally been fixed on a percentage basis rather than by the so-called lodestar method."  In *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998) ("*Prudential II*") the court stated "[t]he percentage-of-recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'"  (Citation omitted.)  *See also AremisSoft*, 210 F.R.D. at 128 ("the percentage-of-recovery method is used in common fund cases on the theory that class members would be unjustly enriched if they did not adequately compensate counsel responsible for generating the fund").[6]  This view is in accord with the dictates of the PSLRA, which

---

[6]     A second method for calculating attorneys' fee awards, the lodestar/multiplier method, by which courts multiply the number of hours spent on the case by each attorney's reasonable hourly rate and then adjust that figure (by applying a multiplier) to reflect such factors as risk, the contingent nature of the litigation, the result obtained, and the quality of the attorney's work (*see, e.g., Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167-69 (3d Cir. 1973) ("*Lindy I*"), subsequently refined in *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116-18 (3d Cir. 1976) (*en banc*) ("*Lindy II*")), has been

- 7 -

provides that a fee award should constitute "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."  15 U.S.C. §78u-4(a)(6).

## III.   THE REQUESTED 25% FEE IS FAIR AND REASONABLE UNDER THE PERCENTAGE-OF-RECOVERY METHOD

Under Third Circuit law, district courts have considerable discretion in setting an appropriate percentage-based fee award in traditional common fund cases.  *See*,

---

discredited by two different task forces of prominent judges and practitioners convened to consider fees in class action cases by the United States Court of Appeals for the Third Circuit, first in 1985, and again in 2002.  *See* Task Force Report, 108 F.R.D. at 238; Third Circuit Task Force Report, *Selection of Class Counsel*, 208 F.R.D. 340 (Jan. 15, 2002).

Since the issuance of the Task Force Report in 1985, virtually every other circuit court has joined this Circuit and the United States Supreme Court in approving use of the percentage-of-the-fund method in common fund cases.  *See, e.g.*, *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995) (permitting use of percentage method, "[c]ontrary to popular belief, it is the lodestar method, not the [percentage] method, that breaks from precedent"); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994) (authorizing percentage and holding that use of lodestar/multiplier method was abuse of discretion); *Florin v. Nationsbank, N.A.*, 34 F.3d 560, 564-65 (7th Cir. 1994); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994); *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 515-16 (6th Cir. 1993).  In fact, two Circuit Courts of Appeal have held that the percentage method is mandatory in common fund cases.  *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases"); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) (rejecting the lodestar approach in all common fund cases and holding that the percentage method is mandatory).

- 8 -

*e.g.*, *Gunter*, 223 F.3d at 195 ("We give [a] great deal of deference to a district court's decision to set fees."); *GMC Trucks*, 55 F.3d at 821.

Nonetheless, in exercising that broad discretion, the Third Circuit has also noted that a district court should consider "among other things," the following factors in determining a fee award, including:

1.      the size of the fund created and the number of persons benefited;

2.      the presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel;

3.      the skill and efficiency of the attorneys involved;

4.      the complexity and duration of the litigation;

5.      the risk of nonpayment;

6.      the amount of time devoted to the case by plaintiffs' counsel; and

7.      the awards in similar cases.

*Gunter*, 223 F.3d at 195 n.1 (citing *Prudential II*, 148 F.3d at 336-40; *GMC Trucks*, 55 F.3d at 819-22).  These fee award factors "need not be applied in a formulaic way . . . and in certain cases, one factor may outweigh the rest."  *Gunter*, 223 F.3d at 195 n.1.

Applying these factors to the present case, a 25% fee award to Lead Plaintiffs' counsel for achieving this highly favorable settlement is both justified and appropriate.

## IV. THE REQUESTED 25% FEE IS FAIR AND REASONABLE UNDER THE THIRD CIRCUIT'S *GUNTER* FACTORS

### A. The Size and Nature of the Common Fund Created and the Number of Persons Benefited by the Settlement

Lead Plaintiffs' counsel have secured a settlement that provides for a substantial and certain cash payment of $4,500,000, plus interest for the benefit of the Class. Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). In *Ikon*, the court in awarding a 30% fee stated "[t]he most significant factor in this case is the quality of representation, as measured by 'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" 194 F.R.D. at 194 (citation omitted). *See also Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

The $4,500,000 cash settlement here provides a substantial and certain benefit to the Class. This favorable settlement was achieved as a direct result of the skill and tenacity of Lead Plaintiffs' counsel in the prosecution of this Litigation on behalf of the Class. There is no question that Lead Plaintiffs' counsel overcame numerous obstacles and took significant risks in obtaining this favorable result for the Class.

- 10 -

Indeed, the settlement was not reached until the case had been fiercely contested for some five years.

While Lead Plaintiffs believe that their claims have substantial merit, if litigation were to proceed there is, nonetheless, a significant risk that the Class could recover less than the amount of the settlement or nothing. Throughout the Litigation, Defendants have consistently maintained that Lead Plaintiffs could not establish liability or damages and have challenged virtually every factual and legal issue in this Litigation in an effort to defeat Lead Plaintiffs' claims. Despite Defendants' extensive efforts, Lead Plaintiffs were able to achieve a good result for the Class under difficult and challenging circumstances. The settlement will provide Class Members compensation for their losses in Avaya common stock, and avoid the substantial expense, delay and uncertainty of continued litigation. The $4.5 million recovery for the Class strongly supports the requested fee award.

Moreover, the number of persons benefited is undeniably large, the Class includes all persons who purchased or acquired Avaya common stock or put and call options during the Class Period. The Notice of Proposed Settlement of Class Action ("Notice") and Proof of Claim form have been mailed to more than 25,500 potential

571310_1

Class Members.[7]   It is therefore reasonable to conclude that thousands of Class Members will participate in and benefit from this settlement.

### B.    The Skill and Efficiency of Lead Plaintiffs' Counsel

It took a great deal of skill to achieve what counsel achieved for the benefit of the Class.   Lead Plaintiffs' counsel's efforts in bringing this action to such a successful conclusion are the best indicator of the experience and ability of the attorneys involved.   *AremisSoft*, 210 F.R.D. at 132 ("'the single clearest factor reflecting the quality of class counsels' services to the class are the results obtained'") (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000)).   The recovery obtained for the Class is the direct result of the significant efforts of highly skilled and specialized attorneys who possess substantial experience in the prosecution of complex securities class actions.[8]   Lead Plaintiffs' counsel's reputations as attorneys who will zealously carry a meritorious case through the trial and appellate levels as well as their demonstrable ability to vigorously develop the evidence in this

---

[7]    *See* paragraphs 3-9 to the Declaration of Carole K. Sylvester Re: A) Mailing of the Notice of Proposed Settlement of Class Action and the Proof of Claim and Release Form, and B) Publication of the Summary Notice ("Sylvester Decl."), dated June 21, 2010, previously submitted to the Court.

[8]    The experience of the law firms that represent Lead Plaintiffs in this action are set forth in the accompanying declarations of Lead Plaintiffs' counsel.   As those submissions show, Lead Plaintiffs' counsel are highly regarded and practice extensively in the highly complex field of shareholder securities litigation.

Litigation enabled them to negotiate the outstanding recovery for the benefit of the Class.

Unlike those cases where plaintiffs' counsel were able to "free ride" on the work of others (such as the SEC or other governmental agency), here Lead Plaintiffs' counsel – and only Lead Plaintiffs' counsel – developed the case against Defendants. There was never an SEC or other governmental agency investigation.  As a result, Lead Plaintiffs' counsel's efforts in achieving this favorable settlement should be accorded greater weight because it was achieved without the benefit of any governmental investigation.[9]

The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by plaintiffs' counsel.  *See*, *e.g.*, *Ikon*, 194 F.R.D. at 194; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) ("The quality of opposing counsel is also important in evaluating the quality of

---

[9]     *See In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (in awarding 25% of a $193 million settlement fund, the court noted the skill and efficiency of plaintiffs' counsel and outstanding results "in a litigation that was far ahead of public agencies like the [SEC] and the United States Department of Justice, which long after the institution of this litigation awakened to the concerns that plaintiffs' counsel first identified"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (In awarding 33-1/3% of the settlement fund, the court noted, "[i]n this Action, Plaintiffs' Class Counsel did not 'piggy back' on any prior governmental action . . . .  Plaintiffs' Class Counsel developed, litigated and successfully negotiated this Action by themselves, expending substantial time and effort.").

- 13 -

plaintiffs' counsels' work."), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  Defendants were represented by Wilson Sonsini Goodrich & Rosati, P.C. and Archer & Greiner, P.C., prominent firms with undeniable experience and skill.  The ability of Lead Plaintiffs' counsel to obtain a favorable settlement for the Class in the face of such formidable legal opposition further confirms the superior quality of Lead Plaintiffs' counsel's representation.

### C.    The Complexity and Duration of the Litigation

There can be no dispute regarding the overall complexity and duration of this securities class action.  This was a complex class action involving complex legal and factual issues under the federal securities laws.  As the court noted in *Ikon*, "[t]here were the legal obstacles of establishing scienter, damages, [and] causation . . . .  The court also acknowledges that securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA. . . .  The Act imposes many new procedural hurdles . . . .  It also substantially alters the legal standards applied to securities fraud claims in ways that generally benefit defendants rather than plaintiffs."  194 F.R.D. at 194-95.  The court's statement in *Ikon* is certainly applicable here.

This action has been vigorously prosecuted and defended for some five years.  At nearly every stage of the litigation, counsel for Defendants have aggressively defended this action and expressed their belief that the Class would not prevail.  Even if Lead Plaintiffs got past summary judgment and were successful against Defendants

- 14 -

at trial and obtained a significant judgment for the Class, Lead Plaintiffs' efforts to establish liability and damages in the Litigation, in all likelihood would not end with a judgment in the District Court, but would continue through one or more levels of appellate review.  In complex and substantial cases such as this, it must be recognized that even a victory at the trial stage does not guarantee ultimate success.  Both trial and judicial review are unpredictable and could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.  Indeed, as the court observed in *Warner Commc'ns*:

> Even a victory at trial is not a guarantee of ultimate success.  If plaintiffs were successful at trial and obtained a judgment for substantially more than the amount of the proposed settlement, the defendants would appeal such judgment.  An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.

618 F. Supp. at 747-48 (citing numerous examples).

In sum, this highly complex case has been extensively litigated and vigorously contested over an extended period of time.  Despite the novelty and difficulty of the issues raised, counsel secured an excellent result for the Class.  As a result, this factor strongly supports the requested award.

### D.    The Risk of Non-Payment

Lead Plaintiffs' counsel undertook this Litigation on a contingent fee basis, assuming a significant risk that the Litigation would yield no recovery and leave them uncompensated.  Unlike counsel for Defendants, who are paid an hourly rate and paid

their expenses on a regular basis, Lead Plaintiffs' counsel have not been compensated for any time or expense since this case began in April 2005. Since that time, Lead Plaintiffs' counsel have expended over 2,200 hours in the prosecution of this Litigation with a resulting lodestar of slightly more than $1,180,000 and incurred $179,329.86 in litigation expenses. Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. For example, in awarding counsel's attorneys' fees in *In re Prudential-Bache Energy Income P'ships*, No. 888, 1994 WL 202394, at *6, (E.D. La. May 18, 1994) the court noted the risks that plaintiffs' counsel had taken:

> Although today it might appear that risk was not great based on Prudential Securities' global settlement with the Securities and Exchange Commission, such was not the case when the action was commenced and throughout most of the litigation. Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable. Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

The Seventh Circuit recently confirmed that the risk of loss is real and should be considered in a motion for attorneys' fees. It reversed the district court's order that had rejected counsel's contention that lawyers faced the risk of nonpayment. *Sutton v. Bernard*, 504 F.3d 688, 694 (7th Cir. 2007) ("Because the district court failed to provide for the risk of loss, the possibility exists that Counsel, whose only source of a fee was a contingent one, was undercompensated.").

- 16 -

While securities cases have always been complex and difficult to prosecute, the PSLRA has only increased the difficulty in successfully prosecuting a securities class action. Indeed, the risk of no recovery in complex cases of this type is very real and is heightened when counsel, as they did here, press to achieve the very best result for those that they represent. Lead Plaintiffs' counsel addressed numerous difficult issues in opposing Defendants' motion to dismiss when there was no guarantee that Lead Plaintiffs' claims would survive the heightened pleading standards of the PSLRA. As one court has noted: "An unfortunate byproduct of the PSLRA is that potentially meritorious suits will be short-circuited by the heightened pleading standard." *Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000), *rev'd on other grounds sub nom. Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001).

As noted herein and in more detail in the Settlement Brief and Leahy Declaration, Defendants steadfastly maintained that they did nothing wrong and offered evidence to support their positions. Assuming Lead Plaintiffs were able to overcome Defendants' inevitable motions for summary judgment, and prove liability at trial, they still would have faced significant risks in proving loss causation and damages. The determination of loss causation and damages is a complicated and subjective process, involving the analysis of many subjective factors. As detailed in the Settlement Brief, proving loss causation would have been one of the major issues if this Litigation continued. Because of the complex nature of establishing loss causation and damages, expert testimony is almost always necessary to establish the

- 17 -

amount – and indeed the existence – of actual damages.  The damage assessments of the parties' respective experts would likely be polar opposites and the determination of the amount, if any, of damages suffered by the Class at trial would have turned into a "battle of the experts."  To the extent that the Defendants could prevail on issues relating to liability or show that any assumptions made by Lead Plaintiffs' experts were incorrect or unreliable or could show that any portion of the market drop was due to factors other than the alleged fraud or that the market was inefficient, Lead Plaintiffs' claimed damages could be significantly reduced or none at all.

There are numerous cases where plaintiffs' counsel in contingent cases such as this, after the expenditure of thousands of hours, have received no compensation.  Lead Plaintiffs' counsel are aware of many hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, or changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts of members of the plaintiffs' bar produced no fee for counsel.  A recent example highlights this point.  In a case against JDS Uniphase Corporation, after a lengthy trial involving securities claims, the jury reached a verdict in defendants' favor.  *See In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), Verdict Questions Form (N.D. Cal. Nov. 27, 2007).  There are

other appellate decisions affirming summary judgment and directed verdicts for

defendants or overturning jury verdicts in securities class actions.[10]

Because the fee in this matter was entirely contingent, the only certainties were

that there would be no fee without a successful result and that such a result would be

realized only after considerable and difficult effort.  The risk of nonpayment in this

case was particularly high.  As noted herein, this Litigation was very risky from the

outset as the defenses deployed against the claims were vigorously asserted, and

largely successful, as this Court found and the Third Circuit affirmed.  There was

---

[10]     *See also Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (Court of Appeals reversed a jury verdict of $81 million on loss causation grounds against an accounting firm after a 19-day trial in Jacksonville, Florida); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (where the class won a substantial jury verdict and motion for judgment n.o.v. was denied, on appeal the judgment was reversed and the case was dismissed – after 11 years of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (multimillion dollar judgment reversed after lengthy trial); *Geffon v. Micrion Corp.*, 249 F.3d 29 (1st Cir. 2001); *Greebel v. FTP Software, Inc.*, 194 F.3d 185 (1st Cir. 1999); *Green v. Nuveen Advisory Corp.*, 295 F.3d 738 (7th Cir. 2002); *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) (verdict against two individual defendants, but court vacated judgment on motion for judgment notwithstanding the verdict); *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542 (6th Cir. 1999); *In re Digi Int'l, Inc. Sec. Litig.*, 14 Fed. Appx. 714 (8th Cir. 2001); *Levitin v. Painewebber, Inc.*, 159 F.3d 698 (2d Cir. 1998); *Longman v. Food Lion, Inc.*, 197 F.3d 675 (4th Cir. 1999); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609 (4th Cir. 1999); *Shuster v. Symmetricom, Inc.*, 35 Fed. Appx. 705 (9th Cir. 2002); *Silver v. H&R Block*, 105 F.3d 394 (8th Cir. 1997); *Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir. 1988) (reversing plaintiffs' jury verdict for securities fraud).

never any admission of wrongdoing and no assistance from any governmental investigation. Lead Plaintiffs also faced significant risks in proving liability as well as the amount, if any, of damages suffered by the Class at trial. Thus, in addition to the very significant risks of nonpayment attendant to complex litigation of this type in general, there were very specific risks attendant to this particular Litigation. Notwithstanding this very real specter of nonpayment, Lead Plaintiffs' counsel committed significant resources of both time and money to the vigorous and successful prosecution of this action. Few law firms could have devoted this kind of time and financial resources to this Litigation. In view of the skill of Defendants' counsel and the legal and factual difficulties of this Litigation, the risk of never being compensated was real. The contingent nature of counsel's representation strongly favors approval of the requested fee.

### E.    The Time Devoted to This Case by Lead Plaintiffs' Counsel Was Significant

To date, Lead Plaintiffs' counsel and their paraprofessionals have expended over 2,200 hours and incurred $179,329.86 in expenses prosecuting this Litigation for the benefit of the Class since its initiation.[11]   As discussed above and in the Leahy Declaration, this action has been extensively litigated and vigorously defended for

---

[11]    *See* the accompanying declarations of Lead Plaintiffs' counsel supporting an award of attorneys' fees and expenses.

some five years.  Defendants fought Lead Plaintiffs at nearly every step of the Litigation in an effort to defeat Lead Plaintiffs' claims.  In short, the successful conclusion of this Litigation required Lead Plaintiffs' counsel to commit a very significant amount of time, personnel and expenses to this Litigation.

### F. Awards in Similar Cases

#### 1. The Requested Fee of 25% of the Settlement Fund is at the Low End of Fees Typically Awarded in Actions of This Nature

There is no general rule as to what percentage of the common fund should be awarded as attorneys' fees.  The Third Circuit has observed that fee awards range from 19% to 45% of the settlement fund.  *GMC Trucks*, 55 F.3d at 822; s*ee also Ikon*, 194 F.R.D. at 194.  As noted above "awards of thirty percent are commonly awarded in other settlements of securities fraud cases."  *Aetna*, 2001 WL 20928, at *14. Indeed, numerous courts within the Third Circuit have awarded fees of 30% or more of the recovery.  *See, e.g., Aviva Partners LLC v. Exide Techs.*, No. 3:05-cv-03098-MLC-LHG, slip op. (D.N.J. June 23, 2009); *In re ATI Techs., Inc. Sec. Litig.*, No. 01-2541, 2003 U.S. Dist. LEXIS 7062 (E.D. Pa. Apr. 28, 2003) (awarding 30%); *In re EquiMed, Inc. Sec. Litig.*, No. 98-cv-5374 (NS), 2003 U.S. Dist. LEXIS 2998 (E.D. Pa. Mar. 3, 2003) (awarding 33-1/3%); *In re Cell Pathways, Inc., Sec. Litig. II*, No. 01-CV-1189, 2002 U.S. Dist. LEXIS 18359, at *43 (E.D. Pa. Sept. 24, 2002) (awarding 30%); *Ikon*, 194 F.R.D. 166 (awarding 30%); *Cullen*, 197 F.R.D. 136

(awarding 33-1/3%); *In re Mobilemedia Sec. Litig.*, No. 96-5723 (AJL), slip op. (D.N.J. Feb. 24, 2000) (awarding 33-1/3%).

The requested fee also falls below the average of fee awards in a study of securities class actions conducted by National Economic Research Associates ("NERA") which found that "[r]egardless of case size, fees average approximately 32 percent of the settlement." Denise N. Martin, Vinita M. Juneja, Todd S. Foster, Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* at 12-13 (NERA 1996). Moreover, the requested fee is within the range of three fee studies relied on by the District Court in *Rite Aid*, 146 F. Supp. 2d 706. As the Third Circuit noted in *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005):

> In comparing this fee request to awards in similar cases, the District Court found persuasive three studies referenced by Professor Coffee: one study of securities class action settlements over $10 million that found an average percentage fee recovery of 31%; a second study by the Federal Judicial Center of all class actions resolved or settled over a four-year period that found a median percentage recovery range of 27-30%; and a third study of class action settlements between $100 million and $200 million that found recoveries in the 25-30% range were "fairly standard." We see no abuse of discretion in the District Court's reliance on these studies.

*Id*. at 303 (citation omitted).

2.      **The Requested 25% Fee Is at the Low End of Contingent Fee Arrangements Negotiated in Non-Class Litigation**

A fee based on the percentage method is also entirely consistent with negotiated fees in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients.  As explained in *In re RJR Nabisco Sec. Litig.*, No. MDL 818 (MBM), 1992 U.S. Dist. LEXIS 12702, at *20 (S.D.N.Y. Aug. 24, 1992):

> What should govern such [fee] awards is not the essentially whimsical view of a judge, or even a panel of judges, as to how much is enough in a particular case, but what the market pays in similar cases.

If this were a non-class action litigation, the customary contingent fee would likely range between 30 and 40 percent of the recovery.  *See, e.g.*, *Ikon*, 194 F.R.D. at 194 ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."); *accord Blum*, 465 U.S. at 903* ("'In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery.'") (citation omitted) (concurring opinion); *In re United States Bioscience Sec. Litig.*, 155 F.R.D. 116, 119 (E.D. Pa. 1994) (adopting Special Master's conclusion that 30% would likely have been negotiated in securities action).

Fees of 25% or more are common in private actions.  For example, the prominent Houston law firm of Vinson & Elkins prosecuted the case of *ETSI Pipeline*

- 23 -

*Project v. Burlington N., Inc.*, No. B-84-979-CA, 1989 U.S. Dist. LEXIS 18796 (E.D. Tex. June 6, 1989), on a one-third contingent fee basis.  After obtaining a $1 billion verdict at trial and subsequently settling the case for $635 million, Vinson & Elkins realized a fee of approximately $212 million.   In a publicly-filed declaration, an attorney from Vinson & Elkins explained with respect to the fee paid in *ETSI Pipeline*: "Absent a willingness to pay on a current basis, it is my belief that a client with a claim such as the one we prosecuted would be required to offer a significant percentage of the recovery to his counsel in order to obtain representation."  *See* Declaration of Harry Reasoner, dated Nov. 30, 1990, at ¶5 (submitted in *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, No. MDL 551 (D. Ariz.)).

Accordingly, the application of the *Gunter* factors makes clear that Lead Plaintiffs' counsel's requested fee of 25% of the Settlement Fund is fair and reasonable.

## V.   THE REQUESTED FEE IS REASONABLE UNDER THE LODESTAR CROSS-CHECK

Although courts in this Circuit almost uniformly apply the percentage approach to determine attorneys' fees in common fund cases like this one, a court may also use a lodestar cross-check to confirm the reasonableness of the requested fee.  In this case, if the cross-check is applied, the requested fee of 25% is clearly fair and reasonable.

The lodestar method, as set forth in the seminal cases *Lindy I* and *Lindy II*, is a two-step process.  The first step requires that the court ascertain the "lodestar" figure

- 24 -

by multiplying the number of hours worked by the normal hourly rate of counsel. The second step permits the court to adjust the lodestar by applying a multiplier to take into account the contingent nature and risks of the litigation, the results obtained and the quality of the services rendered by counsel. *See Lindy I*, 487 F.2d at 167-68; *accord Hensley*, 461 U.S. 424.

### A.    Hours Reasonably Expended by Counsel

Under the *Lindy* cases, the court's determination of a reasonable fee begins with the number of hours expended in the prosecution of the action. Lead Plaintiffs' counsel and their paraprofessionals here have spent, in the aggregate, 2,243.04 hours in the prosecution of this case. For the convenience of the Court and in conformity with practice, the hours of counsel and their paraprofessionals have been submitted to the Court in a summarized form in the accompanying declarations of Lead Plaintiffs' counsel.[12]

### B.    Calculating the "Base" Lodestar

To arrive at the lodestar, the hours expended are typically multiplied by each attorney's respective hourly rate. The hourly rate to be applied in calculating the lodestar is that which is normally charged in the community where the attorney

---

[12]    *See Rite Aid*, 396 F.3d at 307-308 ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records.").

practices. *See Blum,* 465 U.S. at 895; *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 590-91 (3d Cir. 1984). In addition, the Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *Ikon*, 194 F.R.D. at 195.

In determining whether the rates are reasonable, the Court should take into account the attorneys' legal reputation, experience, and status. The accompanying declarations of Lead Plaintiffs' counsel include a description of the background and experience of the firms who worked on this case. These descriptions provide support for the hourly rates charged in this case.

### C.    The Lodestar Multiplier

"Calculation of the lodestar, however, is simply the beginning of the analysis." *Warner Commc'ns*, 618 F. Supp. at 747. In the second step of the analysis, the court adjusts the lodestar to take into account, among other things, the result achieved, the quality of representation, the complexity and magnitude of the litigation, and public policy considerations. *Rite Aid*, 396 F.3d at 305-306. *Fine Paper*, 751 F.2d at 583; *Prudential II*, 148 F.3d at 341. The court then applies the appropriate multiplier to the lodestar number to account for these additional factors.

### D.    Performing the Lodestar Cross-Check

Finally, to perform the lodestar cross-check, the court should determine what the effective multiplier is, and then determine whether the resulting fee would be so

- 26 -

unreasonable as to warrant a downward adjustment.  The cumulative hours expended by Lead Plaintiffs' counsel and their paraprofessionals are 2,243.04 hours.  The cumulative lodestar for the services performed by Lead Plaintiffs' counsel and their paraprofessionals in this action is $1,184,263.60.  Lead Plaintiffs' counsel are seeking an award of 25% of the Settlement Fund which equals a fee of $1,125,000, therefore, the requested fee represents a multiple of slightly less than 1 or a so-called "negative multiplier."  This multiplier is much lower than multipliers applied in other securities cases.  In cases of this nature, multipliers of 3,4, 5 or even more times the lodestar have been awarded to reflect the contingency fee risk and other relevant factors.  *See In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005) (6.96 multiplier), *Aetna*, 2001 WL 20928, at *15 (3.6 multiplier), *Ikon*, 194 F.R.D. at 195 (2.7 multiplier).  Thus, a 25% fee using a lodestar cross-check, is plainly reasonable.

## VI.   LEAD PLAINTIFFS' COUNSEL'S APPLICATION FOR REASONABLY INCURRED LITIGATION EXPENSES SHOULD BE APPROVED

Lead Plaintiffs' counsel also request payment of expenses incurred by them in connection with the prosecution of this Litigation.  Lead Plaintiffs' counsel have submitted separate declarations attesting to the accuracy of their expenses.  Lead Plaintiffs' counsel have incurred expenses in the aggregate amount of $179,329.86 in prosecuting this Litigation.

The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type

typically billed by attorneys to paying clients in the marketplace.[13] The categories of expenses for which counsel seek payment here are the type of expenses routinely charged to hourly clients and, therefore, should be paid out of the common fund.

A significant component of Lead Plaintiffs' counsel's expenses are the cost of experts, consultants, and investigators.

In the post-PSLRA era the use of investigators to gather detailed fact-specific information from percipient witnesses in order to plead complaints that will survive motions to dismiss is a necessity. These in-house and private investigators conducted a substantial amount of work on behalf of the Class. They were able to identify and locate numerous witnesses who had knowledge of the alleged wrongdoing. Lead Plaintiffs' counsel's investigators interviewed some 35 witnesses with knowledge of Lead Plaintiffs' allegations. Lead Plaintiffs' counsel used the fruits (in the main) of this extensive investigation to plead a very fact specific complaint, identify additional

---

[13]  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citation omitted); *see also New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 635 (W.D. Ky. 2006) ("In determining whether the requested expenses are compensable, the Court has considered 'whether the particular costs are the type routinely billed by attorneys to paying clients in similar cases.'") (citation omitted); *In re Safety Components Int'l, Inc.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)); *Cullen*, 197 F.R.D. at 151; *In re Residential Doors Antitrust Litig.*, No. 94-3744, 1998 WL 151804, at *11 (E.D. Pa. Apr. 2, 1998).

witnesses with relevant information concerning the alleged wrongdoing, evaluate the strengths and weaknesses of Lead Plaintiffs' case and assist in settlement negotiations. Lead Plaintiffs' counsel also incurred expenses of in-house and outside economic consultants who performed several important tasks for counsel, including calculating shares available to trade, damage analyses under different scenarios, and prepared the Plan of Allocation.

Lead Plaintiffs' counsel were also required to travel in connection with this Litigation and thus incurred the related costs of meals, lodging and transportation. Lead Plaintiffs' counsel also incurred the costs of computerized research. These are the charges for computerized factual and legal research services including LEXIS, Westlaw, Dow Jones, Disclosure, Inc., CDA Investment Technologies, Pacer Service Center and Choice Point. It is standard practice for attorneys to use these services to assist them in researching legal and factual issues. These services allowed counsel to access Avaya's SEC filings, perform media searches on Avaya, obtain analysts' reports on Avaya, assist in developing Lead Plaintiffs' damage analyses and allowed the investigators to locate and obtain information on witnesses and Defendants.

Other expenses that were necessarily incurred in the prosecution of this Litigation include expenses for court reporters, photocopying and imaging costs, filing and witness fees, postage and overnight delivery charges, and telephone and telecopier expenses. Because these were all necessary expenses incurred by Lead Plaintiffs' counsel, they should be paid from the Settlement Fund.

- 29 -

## VII.  CONCLUSION

For all of the foregoing reasons, Lead Plaintiffs' counsel respectfully request

that the Court approve Lead Plaintiffs' counsel's application for attorneys' fees and

expenses.

DATED:  July 12, 2010                    Respectfully submitted,

COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
JEFFREY W. HERRMANN


                    s/ Peter S. Pearlman
                 PETER S. PEARLMAN

Park 80 Plaza West-One
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)

Liaison Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
ARTHUR C. LEAHY
THEODORE J. PINTAR
JEFFREY D. LIGHT
SHANNON M. MATERA
FRANCIS A. DIGIACCO
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

- 30 -

VANOVERBEKE MICHAUD
   & TIMMONY, P.C.
MICHAEL J. VANOVERBEKE
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)

O'DONOGHUE & O'DONOGHUE LLP
DONALD J. CAPUANO
4748 Wisconsin Avenue, N.W.
Washington, DC  20016
Telephone:  202/362-0041
202/362-2640 (fax)

SCHWARZWALD McNAIR
   & FUSCO LLP
EBEN O. McNAIR IV
616 Penton Media Building
1330 East Ninth Street
Cleveland, OH  44114-1503
Telephone:  216/566-1600
216/566-1814 (fax)

Additional Counsel for Plaintiffs